## BERTHA E. TAYLOR v. NEW YORK LIFE INSURANCE COMPANY.[1]

January 4, 1929.

No. 27,033.

See note in 13 A. L. R. 660; 39 A. L. R. 81; 14 R. C. L. 1239; 3 R. C. L. Supp. 364; 4 R. C. L. Supp. 950; 5 R. C. L. Supp. 804; 6 R. C. L. Supp. 781; 7 R. C. L. Supp. 488.

*Doherty, Rumble, Bunn & Butler,* for appellant.
*C. E. Purdy* and *O. G. Haugland,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its motion for a new trial. Plaintiff's daughter held a $1,000 life insurance policy issued by defendant in which plaintiff was the beneficiary. The insured

[1]Reported in 222 N. W. 912.

died. To the extent of $1,000 the policy has been paid. The policy provided for "Double Indemnity" or an additional $1,000 if "the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means," etc; but under the terms of the policy "Double Indemnity" was not payable if death result "from the taking of poison * * * whether voluntary or otherwise; * * * or, directly or indirectly, from infirmity of mind or body, * * * or from any bacterial infection other than bacterial infection occurring in consequence of accidental and external bodily injury."

The important question in the case is whether the death resulted from injury effected by accidental means. The trial court said that it did.

The insured was a dental nurse. Aside from chronic tonsilitis she was in good health. She submitted to an operation for the removal of her tonsils. The plan was to use a local anaesthetic. Pure novocaine was intentionally used in the usual and proper way for the doing of such intended operation. The insured's body was hypersensitive to the drug novocaine, and her death resulted before the operation was performed. Hypersusceptibility to this particular drug is not the condition of the normal person but is an unusual condition or abnormality which is rarely found. This condition was unknown to the insured and to the surgeon.

■ Had the policy used the words "accidental death" there would be no room for reasonable argument hostile to plaintiff's claim. The difficulty arises in construing the words "accidental means." From a strictly technical point of view the defendant's position finds a logical foundation upon the theory that one may do certain acts the result of which acts may produce unanticipated consequences, and perhaps accidental death, but the means are precisely what he intended. Here the "means" if limited to things designed were not accidental. To follow this theory to its logical conclusion would preclude plaintiff's recovery. There are authorities which support this view. We are not inclined to follow them.

It has been judicially stated that probably from a strictly scientific investigation there is no such thing as an accident. Brintons, Ltd. v. Turvey (1905) A. C. 230, 2 Ann. Cas. 137. It seems to us to be better in the interest of substantial justice to adopt the more practical construction of the language involved and follow its meaning as commonly understood. We think the weight of authority is to the effect that the term "accidental" is equally descriptive of means which produce effects which are not their natural and probable consequences, as it is of means which are wholly unexpected.

"Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means." 1 C. J. 427, § 73.

In Western C. T. Assn. v. Smith (C. C. A.) 85 F. 401, 405, 40 L. R. A. 653, Judge Sanborn tersely stated the rule which we adopt:

"An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

It is also stated in substance that an effect, which is the natural and probable consequence of an act or course of action, is not an accident; nor is it produced by accidental means. Such a consequence is the result of design, or it falls under the maxim that every person is held to intend the usual consequences of his own conduct. The gist of the accident here viewed from the standpoint of an ordinary person was the administration of the novocaine to a person whose body was hypersusceptible to the influences of such

drug, which condition was unknown and not such as to be reasonably anticipated. The authorities tending to sustain and sustaining this construction are numerous and include Frommelt v. Travelers Ins. Co. 150 Minn. 66, 184 N. W. 565; Ludwig v. Preferred Acc. Ins. Co. 113 Minn. 510, 130 N. W. 5; Mutual Life Ins. Co. v. Dodge, (C. C. A.) 11 F. (2d) 486; U. S. Mut. Acc. Assn. v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. ed. 60; Western C. T. Assn. v. Smith (C. C. A.) 85 F. 401, 40 L. R. A. 653; Lewis v. Ocean A. & G. Corp. 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129; Anno. 7 A. L. R. 1133; 13 A. L. R. 660; 14 A. L. R. 788; 35 A. L. R. 1191; 39 A. L. R. 81; 42 A. L. R. 243.

■ Was the susceptibility of the body of the insured to the drug novocaine an "infirmity of mind or body" within the exceptions of the policy? Such language is construed to relate to an ailment or disease of a settled character. In any event an "infirmity" indicates weakness, feebleness, debility, frailty, disease—something that materially impairs bodily powers. But the undisputed testimony is that a hypersusceptible condition in no way disturbs the person or his activities in normal life and that he does not know of its presence and will normally and naturally live just as long with as without it. It in no way impairs bodily health or strength, nor does it in any way interfere with the functioning of the organs of the body. This condition is unusual and a peculiarity but not an infirmity. This language has been construed, and we believe properly, against the defendant's contention. Mutual Life Ins. Co. v. Dodge (C. C. A.) 11 F. (2d) 486.

■ It is also contended that the death resulted from "the taking of poison." The uncontradicted medical testimony is that the drug used in no way, as a poison, contributed to the death. The finding is that the insured's death resulted "directly and independently of all other causes" from the application of the novocaine to the body so infected. The evidence and this finding leave no opportunity for defendant to speculate as to the cause of death.

■ Defendant further says that the death resulted from a "bacterial infection," which is an exception of the policy. Tonsilitis is a "bacterial infection," but tonsilitis did not directly or indirectly

cause the death. The cause of the death is stated in the paragraph last above. The tonsilitis was the occasion for the administration of the novocaine, but it was not the cause of death. Had the infection of the tonsils been of such character as to cause the hypersensitiveness of the body, it could then have been said that it was the indirect cause of death. Such was not the case.

Affirmed.