BILLINGS v. CONTINENTAL LIFE INS. CO.

No. 5076, Decided April 26, 1933. (21 P. [2d] 103.)

*Wm. A. Hilton,* of Salt Lake City, for appellant.
*Robinson & Robinson,* of Provo, for respondent.

STRAUP, Chief Justice.

This action was brought to recover on an insurance policy issued by the defendant, insuring Kenneth Billings, the de-

ceased, "against death or disability resulting directly, independently, and exclusively of all other causes from bodily injuries effected solely through external, violent, and accidental means and sustained by the insured * * * by the wrecking or disablement of any private automobile, motor driven car, or horse drawn vehicle in which the insured is riding or driving, or by being accidentally thrown from such automobile, car or vehicle."

The controversy arose as to whether the insured within the meaning of the policy by violent and accidental means was thrown from an automobile or motorcar driven by him, and as to whether death resulted from injuries sustained in such manner. The affirmative is asserted by the plaintiff, the negative by the defendant. The case was tried to the court and a jury, the trial of which resulted in a verdict and judgment in favor of the plaintiff. The defendant appeals and contends that the evidence is insufficient to sustain the verdict as to either proposition, that the court thus erred in refusing to grant a nonsuit or to direct a verdict, and in refusing requests of the defendant to charge the jury.

The insured, a young man, about 24 years of age was employed or engaged in hauling coal with a one-ton Ford motortruck from a coal yard operated by his father or by both the father and the insured. The sides of the cab of the truck were without doors. The body of the truck was wider than the cab. On the day of the accident, January 30, 1929, the insured was driving the truck loaded with coal out of the coal yard. A long metal coal chute, weighing about 100 pounds and used in unloading coal from the truck, was carried on the loaded truck and which extended along and beyond the righthand side of the cab. The driveway leading from the yard through a gate to a cement pavement was rough and "rutted," the surface of which was frozen. The truck was a left-hand drive. The insured was in the cab driving the truck. The father was standing nearby to the insured's left as the insured drove past him through the gate. Because of the condition of the driveway, and

not to kill the engine of the truck, it was necessary to drive the truck when loaded at a rather good speed. The insured was driving in low gear at a rate of speed of from 3 to 5 miles per hour. The grade was downhill. The father, who was the only witness to the accident, testified that he saw the insured come out at a pretty good speed, which was required with a big load of coal, and as he was driving out—

"I am not sure what influenced him to make a move from his wheel but something influenced him to move from his wheel and he seemed to reach out for something, but the cab or the truck being quartered out from me, rather obscured his acts, so I don't know just what he did, but before I had time to really realize what caused his actions he was thrown violently on to the pavement outside the gate. At the same time the chute dropped off inside the gate, evidently, I thought, struck the gate post and I sort of took it for granted that he saw the chute was going and grabbed for it or something, but I don't know about that, but what I saw was that he plunged out of the—or was thrown out of the cab, which had no door in, and lit violently on the pavement away from the control of his car, and the truck turned right along the sidewalk; the chute was carried along the right hand side of the truck where it usually was carried and extended beyond the side of the cab; the chute was lying in the yard, it had evidently struck the post, pulled the chute off and the truck went from under it. * * * The boy was lying on the cement pavement six or eight feet from the chute outside the gate, the chute on one side of the post in the yard and the boy on the other side of the post, the chute fell in the yard and the boy on the sidewalk. * * * I don't know whether he —seeing the chute liable to hit the gate—whether he made a pass to void it or what; it was rather obscured from me * * * I saw him move and saw him drop on to the pavement. * * * From what I saw it was probably the logical idea that he grabbed to avoid that chute turning over and striking the post, that is my logical idea of it. I don't know what other reason he would have for leaving the wheel. * * * When he left the truck whether he hung to the wheel or not with his left hand—anyway the truck turned to the left and took on really more momentum there as it was down hill from the gate out onto the pavement and that is when he pitched out of the truck. * * * The position I was in I could just see part of his movements. * * * He was pitched or thrown out—I wouldn't be able to distinguish between pitched or thrown. He went violently on the sidewalk on the pavement and seemed absolutely to lose control of himself so that he was pitched out—thrown out and went out head first."

He further testified that he went to the deceased as quickly as he could and helped him up; that the deceased complained of pain in his shoulder; that the index finger of his right hand was badly cut, a fresh cut, and bleeding profusely and he got a rag and wrapped it up; that the next morning the finger was very sore and the deceased complained of much pain in the finger and he advised him to see a doctor which the deceased did.

The physician testified that the deceased visited him at his office, January 31st, and that he treated him in his office that day and February 1st and 2d for an infection in the finger, and on February 3d, 4th, 5th at the deceased's home; that on the first visit the deceased was suffering considerable pain in the finger and up his arm and also complained of pain in his shoulder and hip upon which there were redness and marks of contusion on the right shoulder; that the deceased was suffering from acute septicaemia caused by the wound of the finger and extended up the arm; that he was given the usual treatment, fully described by the physician and "vaccine and antitoxins with the hope of staying the process of the infection." The doctor, unable to arrest the infection, on February 6th took the deceased to the hospital where two other physicians were called in consultation and where he was given further treatment. The deceased died February 11th. The physician testified that the cause of death was blood poisoning due to the infection of the wound of the finger. Prior to the accident the deceased was in good health. That his finger was cut and bruised in the accident is not disputed.

As to the foregoing there is no conflict in the evidence. No evidence whatever was adduced by the defendant either as to the accident or cause of death. From the evidence adduced, as heretofore stated, the defendant contends that the death was due to voluntary acts of the insured and not from an accident within the meaning of the policy. To support that it cites and relies on the cases of *Feder* v. *Iowa State Traveling Men's Association*, 107 Iowa 538, 78 N. W.

252, 43 L. R. A. 693, 70 Am. St. Rep. 212; *Olinsky* v. *Ry. Mail Ass'n,* 182 Cal. 669, 189 P. 835, 14 A. L. R. 784; *Pledger* v. *Business Men's Acc. Association* (Tex. Civ. App.) 197 S. W. 889; *Fidelity & Casualty Co.* v. *Stacey's Ex'rs* (C. C. A.) 143 F. 271, 5 L. R. A. (N. S.) 657, 6 Ann. Cas. 955; *Pope* v. *Prudential Ins. Co.* (C. C. A.) 29 F. (2d) 185; *Shanberg* v. *Fidelity & Cas. Co.* (C. C. A.) 158 F. 1, 19 L. R. A. (N. S.) 1206; *Maryland Casualty Co.* v. *Spitz* (C. C. A.) 246 F. 817, 19 L. R. A. 1918C, 1191; *New Amsterdam Casualty Co.* v. *Johnson,* 91 Ohio St. 155, 110 N. E. 475, L. R. A. 1916B, 1018; *Kendall* v. *Travelers' Pro. Ass'n,* 87 Or. 179, 169 P. 751; *Caldwell* v. *Travelers' Ins. Co.,* 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56; *Schmid* v. *Indiana Travelers' Acc. Ass'n,* 42 Ind. App. 483, 85 N. E. 1032.

We have examined the cases and find them inapplicable. They involve facts entirely and materially different from those here involved. The case, as we think, ■ falls within the well-established rule stated in 1 C. J. 427, that:

"Where the effect is not the natural and probable consequence of the means which produces it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, it is produced by accidental means."

The rule is well stated by Mr. Justice Sanborn in the case of *Western Commercial Travelers' Ass'n* v. *Smith,* 85 F. 401, 405, 29 C. C. A. 223, 40 L. R. A. 653, and approved in *Aetna Life Insurance Company* v. *Brand* (C. C. A.) 265 F. 6, 13 A. L. R. 657, that:

"An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maximum that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be

■

reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

So too in 6 Cooley's Briefs on Insurance (2d Ed.) p. 5237, that:

"Whether the means producing the injury is accidental depends upon the character of its effects. Accidental means are those which produce effects which are not their natural and probable consequences. (Citing cases). An accident within a policy of accident insurance is an event which takes place without one's foresight or expectation and which proceeds from an unknown cause, or an unusual effect of a known cause not within the expectation of the person insured, that is to say, the term involves the idea of an event happening suddenly unforseen and unexpected."

The case of *United States Mutual Accident Association* v. *Barry*, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60, is to the same effect.

That is the doctrine adopted in this jurisdiction. *Richards* v. *Standard Acc. Ins. Co.*, 58 Utah 622, 200 P. 1017, 17 A. L. R. 1183; *Carter* v. *Standard Acc. Ins. Co.*, 65 Utah 465, 238 P. 259, 41 A. L. R. 1495.

On the record there is no basis for the argument that the deceased voluntarily or willfully or with design threw himself out of the truck, or did anything with a design or intent of accomplishing, or which as a natural or expected or forseen consequence might or would lead to, such a result.

The further point that death was not the result of the accident is of less merit. That the deceased by the accident sustained a rather severe cut and bruise on the finger which resulted in acute septicaemia, and that death was due from

such and no other cause, the evidence is without dispute. Nothing further need be said as to that.

The defendant requested the court to charge:

(1) "The Court instructs the Jury that the Plaintiff cannot recover if you find that the said Kenneth P. Billings came to the ground in any other way than by being involuntarily, forcefully and against his will thrown from his automobile truck by the happening of some unexpected or unforseen event, although you may find that his death was thereafter caused by blood-poisoning."

(2) "The Court instructs the Jury that if you find from the evidence that the said Kenneth P. Billings did reach out of the cab of said automobile truck and did take or attempt to take hold of a large one hundred pound chute, placed on said truck and extended to and beyond the open doorway in the cab attached to said truck in which the said Kenneth P. Billings was sitting while driving said automobile truck, to steady the same or prevent it from falling off from said truck, and when so doing the sleeve or cuff on the sleeve of his overcoat caught on said chute and that the said Kenneth P. Billings was in that manner pulled out of said automobile truck, your verdict must be for the defendant."

The requests were refused. The court charged:

"You are instructed that the burden is upon the plaintiff to prove by the preponderance, or greater weight, of the evidence, that the decedent met his death, and that his death was directly, independently, and exclusively of all other causes, due to bodily injuries effected solely through external, violent, and accidental means, by being accidentally thrown from a private automobile, or motor driven car in which the insured was riding or driving."

As to the first request, the jury upon the evidence was not justified in finding that the deceased "came or fell to the ground," in a way other than by being involuntarily, forcibly, and against his will thrown from the truck. The argument that it could or was privileged to find that the deceased voluntarily or willfully or with design cast himself out of the truck to the ground or pavement is wholly unsupported by the evidence. In the next place, the charge as given directed the jury that before they could find for the plaintiff, they were required to find that the deceased

"met his death, and that his death was directly, independently and exclusively of all other causes, due to bodily injuries effected solely through external, violent and accidental means by being accidentally thrown" from the truck in which he was riding or driving.

Evidence was given to show that the father, shortly after the accident, among other things, stated that as the deceased drove through the gate, "he made a pass to grab the chute to straighten it up and his cuff on the overcoat caught on the chute which struck the gate post and pulled him back out of the cab on the ground; and as to whether he got the injury to his hand on the chute or the gate post," he did not know. In view of that, request No. 2 seemingly was asked. Though the deceased did reach out of the cab and took hold or attempted to take hold of the chute to steady or to prevent it from falling off or striking the post, and though in doing so his sleeve or cuff of the overcoat caught on the chute and the deceased was pulled off the truck, nevertheless, because of such facts, the defendant was not entitled, as requested, to a verdict in its favor, for all that could well have been found as involving but accidental means.

The judgment is affirmed with costs to respondent.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.