WHEELER *v.* TITLE GUARANTY & CASUALTY COMPANY OF AMERICA.

INSURANCE—ACCIDENT—ANÆSTHETIC.

Death was caused by accidental means within meaning of accident insurance policy where it occurred as an unforeseen, unexpected and unusual result of administration of usual amount of nupercaine, an anæsthetic, owing to tonsilectomy patient's idiosyncrasy or hypersusceptibility to the drug.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 11, 1933. (Docket No. 45, Calendar No. 37,374.) Decided December 5, 1933. Rehearing denied April 3, 1934.

Assumpsit by Warren H. Wheeler against Title Guaranty & Casualty Company of America on a policy of accident insurance. Judgment for plaintiff. Defendant appeals. Affirmed.

*Linsey, Shivel & Phelps,* for plaintiff.

*Baillie & Murchie* and *R. P. Scholte (Thomas G. Baillie,* of counsel), for defendant.

SHARPE, J. The facts in this case are stipulated. On April 28, 1931, the defendant company issued a policy of insurance to Frankiedell Wheeler, of the city of Grand Rapids, in which it agreed to pay to the beneficiary, the plaintiff herein (her husband), the sum of $1,000 in the event of her death "due to accidental bodily injuries." In October, 1932, the insured was suffering from a cold in her head and consulted Dr. Oliver, who discovered that her tonsils were affected and advised their removal. On November 1st she went to his office to have them removed, and in preparation therefor the doctor painted the affected area with, and injected into it, the usual amount of an anæsthetic solution known as nupercaine. After waiting until the organs of the throat were properly deadened to pain, he began the operation and, when he had partially completed it, the insured collapsed and died within a few minutes thereafter.

The doctor testified that the cause of her death "was a drug reaction from the anæsthetic;" that "she had an idiosyncrasy to the nupercaine;" that

the removal of her tonsils had nothing to do with her death, which was caused by the administration of the nupercaine "and her hypersusceptibility to this particular drug * * * which could not have been known to any practicing physician before it was given."

On trial by the court without a jury, he found that the death of the insured was "due to accidental bodily injuries," and entered judgment for the plaintiff, from which the defendant has taken this appeal.

Accidental injury is defined in the policy as follows:

" 'Accidental injury' as used in this policy means bodily injury suffered while this policy is in force and which is effected solely and independently of all other causes through accidental means."

What are "accidental injuries," as thus defined, has been the subject of much litigation. In 1 C. J. p. 427, it is said:

"Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means."

A quite similar statement will be found in 14 R. C. L. p. 1239.

Counsel for the plaintiff rely on our holdings in *Johnson* v. *Fidelity & Casualty Co.*, 184 Mich. 406 (L. R. A. 1916 A, 475), and *Ashley* v. *Agricultural Life Ins. Co.*, 241 Mich. 441 (58 A. L. R. 1208). The distinction between those cases and that now before us lies in the fact that the act of a third person is here involved.

In *Mutual Accident Ass'n* v. *Barry,* 131 U. S. 100 (9 Sup. Ct. 755), quoted from with approval in *Ashley* v. *Agricultural Life Ins. Co., supra,* the court said:

"That, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but, that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

The latter part of this quotation is peculiarly applicable to the facts here presented. The act which here preceded the death of the insured was the administering of the anæsthetic to her by the doctor, and as a result thereof, owing to her hypersusceptibility to this drug, an unforeseen, unexpected and unusual occurrence—her death—followed. Clearly, it was caused by accidental means as thus defined.

A case on all fours with that here before us was presented to the circuit court of appeals, fourth district, *Mutual Life Ins. Co.* v. *Dodge* (C. C. A.), 11 Fed. (2d) 486 (59 A. L. R. 1290). Novocaine was administered in that case to allay the pain incident to the removal of tonsils, and resulted in death because the insured had an "idiosyncrasy" or "hypersusceptibility" to its use. The following instruction of the trial court to the jury was approved and the death held to have been caused by accidental means:

"If the jury shall find that there was injected into the deceased a quantity of the drug novocaine for the purpose of inducing anæsthesia, and that the natural and probable effect of novocaine administered in the manner and in the quantity used in this case is to induce local anæsthesia without injury to the patient, and if they shall further find that by

reason of a bodily idiosyncrasy of the insured whereby he was unusually susceptible to said drug, which susceptibility was unforeseen and unexpected, and the action of the drug was to cause death, then their verdict shall be for the plaintiff."

A similar question, where novocaine was also used, was presented in *Taylor* v. *New York Life Ins. Co.,* 176 Minn. 171 (222 N. W. 912, 60 A. L. R. 959), and the conclusion reached that the death was produced by "accidental means." Many authorities in support of the holding are there cited.

What are "accidental means" was considered at length in *Western Commercial Travelers' Ass'n* v. *Smith,* 29 C. C. A. 223 (85 Fed. 401, 40 L. R. A. 653). Judge Sanborn there said:

"The significance of this word 'accidental' is best perceived by a consideration of the relation of causes to their effects. The word is descriptive of means which produce effects which are not their natural and probable consequences. The natural consequence of means used is the consequence which ordinarily follows from their use,—the result which may be reasonably anticipated from their use, and which ought to be expected. The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which

he cannot be charged with the design of producing, under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.''

See, also, *Elsey* v. *Fidelity & C. Co.,* 187 Ind. 447 (120 N. E. 42, L. R. A. 1918 F, 646).

There are decisions holding otherwise. In *Caldwell* v. *Travelers' Insurance Co.,* 305 Mo. 619 (267 S. W. 907, 39 A. L. R. 56), the authorities are collected and discussed at length. See, also, *Order of United Commercial Travelers* v. *Shane* (C. C. A.), 64 Fed. (2d) 55.

In our opinion the death of the deceased was due to ''accidental means'' and the judgment is affirmed.

McDONALD, C. J., and WEADOCK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.