## WHATCOTT v. CONTINENTAL CASUALTY CO.

No. 5345. Decided January 7, 1935. (39 P. [2d] 733.)

*K. C. Tanner*, of Salt Lake City, for appellant.

*Geo. H. Smith, R. B. Porter*, and *W. Hal Farr*, all of Salt Lake City, for respondent.

ELIAS HANSEN, Justice.

This action was brought to recover upon an accident insurance policy issued to John J. Whatcott. Plaintiff is the beneficiary named in the policy. She is the surviving widow of John J. Whatcott, who died on February 2, 1931, while being operated on for chronic appendicitis. The policy sued upon contains, among others, the following provision:

"The insurance given by this policy is against loss of life * * * resulting from a personal bodily injury which is affected solely and independently of all other causes by happening of an external, violent and purely accidental event."

It in substance is alleged in the complaint and the evidence shows without conflict that John J. Whatcott was advised by his physicians and surgeons that it was necessary for him to be operated upon for an internal disorder; that in reliance upon such advice he decided to undergo such an operation; that prior to being operated upon he was in good health excepting he was troubled with chronic appendicitis; that, in order to produce anaesthesia, novocaine was injected into the spine of Mr. Whatcott; that soon after he was under the influence of the anaesthetic an incision was made in the usual way in his abdomen; that, while the operation was in progress and before it was completed, Mr. Whatcott's respiratory organs began to fail and became paralyzed and failed to function properly, and, notwithstanding attempts were made to resuscitate him, his respiratory organs failed and he died. It is further, in substance, alleged in the complaint that at the time Mr. Whatcott was operated upon he, unknown to himself and to his physicians and surgeons, had an idiosyncracy or hypersusceptibility to the use of novocaine as an anaesthetic; that the use of novocaine as an anaesthetic upon him together with the incision made in his abdomen were the sole causes of his death; that the deadly

effect of the anaesthetic and the incision made in his abdomen were wholly unforeseen and unexpected, and hence his death was purely accidental.

A demurrer to the complaint was overruled, and defendant answered, wherein it admitted most of the allegations of the complaint, but denied that the use of novocaine as an anaesthetic and the making of the incision caused Mr. Whatcott's death and denied that his death was accidental. Upon the issues thus joined a trial was had to the court sitting with a jury. A verdict of no cause of action was returned by the jury, and judgment was rendered in accordance therewith. Plaintiff appeals. Her assignments of error are directed against the admission of evidence, the instructions to the jury, and the refusal of the court to grant a new trial. No cross-assignments of error are made by the respondent.

There is no merit to appellant's claim that the judgment should be reversed because of the improper admission of evidence. It was alleged in the complaint and admitted in the answer that plaintiff had timely filed proof of her claim. Plaintiff was called as a witness and testified in her own behalf at the trial. As a part of her cross-examination she was interrogated as to the claim which she filed with the defendant company. She answered a few questions over timely objections and exceptions of her counsel as to who prepared the claim and who sent it to the defendant company. The claim was offered in evidence, but an objection to its admission was sustained. The mere fact that no issue was raised with respect to the presentation of the claim did not, as plaintiff seems to contend, necessarily preclude the admission in evidence of the claim. We are not advised as to what the claim contained or the purpose for which counsel for the defendant sought its admission, but in any event it is difficult to perceive how plaintiff's cause was affected by the questions asked and the answers given with respect to the preparation and sending to the defendant of the written claim.

A discussion of the assignments relating to the court's in-

structions to the jury requires a brief summary of that part of the evidence which is in conflict. The only issue raised by the pleadings and the only conflict in the evidence is with respect to the cause of Mr. Whatcott's death. Dr. Perry G. Snow was called as a witness by the plaintiff. He was shown to be qualified to testify as an expert touching the use of anaesthetics and their effect upon the human body. His attention was directed to the circumstances which admittedly surrounded the death of Mr. Whatcott. In answer to a hypothetical question, he expressed it as his opinion that, due to a hypersusceptibility or idiosyncracy of Mr. Whatcott to novocaine, that drug to him was a deadly poison, and its injection into his spine was the sole cause of his death. Other doctors were called by the defendant who in substance testified that they would not venture an opinion as to what was the cause of Mr. Whatcott's death and that it was a mere guess to say that it was the anaesthetic used at the time of the operation. Upon the issues thus raised by the pleadings and the evidence, the trial court instructed the jury as follows:

"The jury is instructed that it is not sufficient that it believes that the death of Mr. Whatcott may have resulted by reason of his alleged hypersusceptibility to this drug, but it must believe and find from the evidence that this alleged hypersusceptibility did actually and independently of all other causes produce his death. You are not permitted to guess at what caused Mr. Whatcott's death, but, before returning a verdict for plaintiff, you should be satisfied in your own minds, as reasonable men, that this alleged hypersusceptibility to the drug administered and this alone caused his death. In your deliberations and in your consideration of the evidence you may believe this alleged hypersusceptibility to the drug contributed to Mr. Whatcott's death. You may also believe that there were other contributing causes. In such event, you are instructed that if you should reach these conclusions, then your verdict should be for the defendant, for the reason that the hypersusceptibility to the drug was not the sole cause of Mr. Whatcott's death.

"The jury is instructed that plaintiff has alleged that the death of John J. Whatcott resulted from his hypersusceptibility to a certain drug during a surgical operation. The policy of insurance which plaintiff has sued upon provided for payment when the death results

from a personal bodily injury which is affected solely and independently of all other causes by the happening of an external, violent and purely accidental event. You are, therefore, instructed that in order to find a verdict for plaintiff you must believe from the evidence that the death of plaintiff's husband was effected solely by this alleged hypersusceptibility and independently of all other causes. In other words, if you believe that Mr. Whatcott's death may have resulted from causes other than that alleged, or if you are in doubt as to what caused his death, then your verdict should be for the defendant."

Plaintiff excepted to the whole of the foregoing instructions and to the various parts thereof. Error is assigned because of the instructions. Plaintiff contends that the instructions excepted to improperly require her to prove the exact or precise cause of the death of the deceased and that a part of these instructions cast upon her a higher degree of proof than the law imposes upon her. The contrary is contended by defendant. It is further urged by defendant that, even though it be conceded that Mr. Whatcott died because of his hypersusceptibility to the anaesthetic injected in him at the time of the operation, such fact would not entitle plaintiff to recover on the policy, and that the evidence received was so vague and uncertain as to the cause of his death that plaintiff did not make out a case for the consideration of the jury, and hence no prejudicial error was or could be committed in the instruction complained of. We are of the opinion, and so hold, that the evidence of Dr. Snow, if believed by the jury, would entitle plaintiff to a verdict.

Counsel for the respective parties have cited numerous cases dealing with accident insurance policies containing provisions insuring against injury or death caused by accidental means. There is a sharp conflict in the adjudicated cases dealing with policies containing such pro- ██ visions. Some of the cases hold that, an accident insurance policy providing that the insurer's liability shall attach only when the injury is through accidental means, it is not sufficient that the result, that is, the injury or death which followed the means, was accidental, but that

the means must be accidental. In those cases recovery is denied for the unexpected results of an intentional act. Such is the holding of the Supreme Court of Missouri in the case of *Caldwell* v. *Travelers' Insur. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56, and also in a recent case of the Supreme Court of the United States, *Florence Samuels Landress* v. *Phoenix Mutual Life Ins. Co. et al.*, 291 U. S. 491, 54 S. Ct. 461, 78 L. Ed. 934, 90 A. L. R. 1382. In those cases numerous other cases are cited and reviewed dealing with accident insurance policies which insure against injury or death caused by accidental means, and the conclusion is reached that, according to the great weight of authority, unexpected results caused by an intentional act are not covered by such a policy. The following cases are among those where it has been held that an insurance policy containing a provision insuring against injury or death caused by accidental means entitles the insured, or, in case of death, his beneficiary, to recover for the unusual or unexpected results of an intentional act, even though such results occur without mischance, slip, or mishap: *Taylor* v. *New York Life Ins. Co.*, 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959; *Mutual Life Ins. Co. of N. Y.* v. *Dodge* (C. C. A.) 11 F. (2d) 486, 59 A. L. R. 1290; *Lewis* v. *Ocean Acc. & Guar. Corp'n*, 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129; *Schleicher* v. *General Acc., F. & L. Assur. Corp'n*, 240 Ill. App. 247; *Jensma* v. *Sun Life Assur. Co.* (9 C. C. A.) 64 F. (2d) 457. The causes of death in the cases of *Taylor* v. *New York Life Ins. Co.*, and *Mutual Life Ins. Co. of New York* v. *Dodge*, supra, involved the same cause of death as is relied upon by the plaintiff in this action. In both cases the insurer was held liable. The rule of construction of accident insurance policies followed in the cases last above cited has become the settled law in this jurisdiction. *Richards* v. *Standard Acc. Ins. Co.*, 58 Utah, 622, 200 P. 1017, 17 A. L. R. 1183; *Carter* v. *Standard Acc. Ins. Co.*, 65 Utah, 465, 238 P. 259, 41 A. L. R. 1495; *Billings* v. *Continental Life Ins. Co.*, 81 Utah 572, 21 P. (2d) 103. There is, however, a substantial difference between the language used in the

policy here under review and the policies involved in the foregoing cases. The policy on which this action is founded provided for insurance against the happening of an accidental event. Among the definitions of the word "event" given in Webster's New International Dictionary are, "the fact of taking place or occurring, that which comes, arrives, or happens; any incident, good or bad, especially one that is important or remarkable; the consequence of anything, the issue, conclusion, result," etc. In discussing an accident insurance policy containing the identical language now being considered, the federal Court of Appeals for the Fourth Circuit said:

"Surely 'accidental event' does not have, nor can it possibly have, the same significance or meaning as 'accidental means.' An event is the culmination or end that the 'means' may have produced or brought about. There is the same relationship between means and the event that results, that there is between cause and effect. The means may not have been in any way accidental, yet the event because of some unknown and unknowable factor highly accidental. An 'accident' as defined by Webster is: 'An event which takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is the unusual effect of a known cause, and therefore not expected.' "

*Continental Casualty Co.* v. *Willis* (C. C. A.) 28 Fed. (2d) 707, 708, 61 A. L. R. 1069.

The death of Mr. Whatcott was an event which, if Dr. Snow's testimony is to be believed, was the unexpected and unusual effect of the injection of novocaine into the spine of Mr. Whatcott, and hence an accidental event within the meaning of the policy. No claim is made that the method of using the anaesthetic upon Mr. Whatcott was not external and violent within the meaning of the policy.

Appellant contends that she was entitled to a verdict if her husband's death was brought· about by the operation, that it was not necessary for her to prove that the use of the anaesthetic was the sole cause, and therefore that the court was in error in instructing the jury that to entitle plaintiff to recover it was necessary for them to

"believe from the evidence that the death of plaintiff's husband was effected solely by this alleged hypersusceptibility and independent of all other causes." The objection to the instructions was well taken. Plaintiff alleged that the death of her husband was caused by the use of the anaesthetic and the operation. The evidence shows without conflict that it is very unusual for a person to die as the result of an incision such as that made on the abdomen of the deceased. Death from an incision is no less an accidental event than is death caused by the injection of novocaine. Death caused by either or both is according to all of the evidence an unusual effect which cannot be foreseen and may not be reasonably expected. An event which is unusual and unexpected is none the less accidental when it results from two causes rather than from a single cause. The instructions complained of were prejudicial and require a reversal of the judgment.

Appellant is also entitled to prevail on her assignment attacking that portion of the instruction wherein the trial court instructed the jury "if you are in doubt as to what caused his (Mr. Whatcott's) death, then your verdict should be for the defendant." Plaintiff was entitled to a verdict at the hands of the jury if, to their minds, she established the material allegations of her complaint by a preponderance or greater weight of the evidence. Obviously there may be a clear preponderance of the evidence in favor of the existence of an alleged fact and yet the jury may entertain some doubt about its being the fact.

What has been said with respect to the assignments already considered disposes of the assignment attacking the order of the court below refusing to grant a new trial.

The judgment is reversed. This cause is remanded to the district court of Salt Lake county, with directions to grant a new trial; costs to appellant.

SRAUTP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.