WOLFE, Respondent, v. THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Appellant.

(18 N. W.2d 755.)

(File No. 8756. Opinion filed May 15, 1945.)

Rehearing Denied June 26, 1945.

**Byron S. Payne,** of Pierre, and **E. W. Dillon,** of Columbus, Ohio, for Appellant.

**H. F. Fellows,** of Rapid City, for Respondent.

SICKEL, J. The defendant is a fraternal benefit association, incorporated and having its domicile in the State of Ohio. On December 21, 1922, it issued an insurance certificate to Ford Shane naming Elizabeth Shane, his mother, as beneficiary. The certificate provided for indemnity against bodily injuries effected through external, violent and accidental means. The indemnity provided for death was $5,000 cash, and $1,300 in weekly installments of $25 each. On May 8, 1931, the insured visited a physician's office to be examined for stricture. The doctors applied a local anesthetic, preliminary to introducing a sound for exploratory purposes. The insured went into convulsions as a result of the anesthetic and died within about two minutes. The beneficiary then brought an action on the certificate in Pennington county. The case was removed to the United States District Court where it was tried resulting in a judgment for the plaintiff. Defendant appealed to the Circuit Court of Appeals where the judgment was reversed. Order of United Commercial Travelers v. Shane, 8 Cir., 64 F.2d 55. The case was then remanded to the United States District Court, and before any further proceedings were had the action was dismissed without prejudice, on stipulation of the parties. The beneficiary thereafter assigned her claim to Edward C. Wolfe who brought this action. Judgment was entered for plaintiff in the circuit court, and the defendant has appealed.

Appellant claims that this action was not commenced within six month from the time the claim on the certificate was disallowed, and that the claim is therefore barred. The constitution of the association was made a part of the certificate and provides: "No suit or proceeding, either at

law or in equity, shall be brought to recover any benefits under this Article after six (6) months from the date the claim for said benefits is disallowed by the Supreme Executive Committee."

This limitation is valid under the statutes and judicial decisions of the state of Ohio where the insurer has its domicile. Bartley v. National Business Men's Ass'n, 109 Ohio St. 585, 143 N. E. 386.

■ Respondent admits that this action was not commenced within six months from the time that the claim was rejected, but claims that the limitation fixed by the contract is void in this state, under SDC 10.0705, which provides: "Every provision in a contract restricting a party from enforcing his rights under it by usual 'legal proceedings in ordinary tribunals or limiting his time to do so, is void."

The above section of the Code is a statute of general application, and it is valid. Vesey v. Commercial Union Assur. Co., 18 S. D. 632, 101 N. W. 1074; Douville v. Pacific Coast Casualty Co., 25 Idaho 396, 138 P. 506, Ann.Cas.1917A, 112; 37 C.J., Limitation of Actions, § 45, Note 4.

The question then is whether the limitation contained in the contract, valid under the laws of Ohio where the appellant has its domicile, or the laws of South Dakota where this action was brought, are applicable in this case. If our decision is to be ruled by the contract, the action is barred. If we are to be governed by the South Dakota statute, the action is not barred. Obviously, this court will follow its own decisions and the statutes of this state, unless it finds, as appellant claims, that the limitation contained in the contract must be upheld under the Federal Constitution, notwithstanding the laws of this state.

■ In Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487, the following rule was stated: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law."

This rule applies to the whole field of conflict of laws. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U. S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. It is not limited by the "full faith and credit" clause of the United States Constitution, Art. 4, § 1, in any case relating to "persons and events" within the state of the forum, Pacific Employers Ins. Co. v. Industrial Accident Comm., 306 U. S. 493, 59 S.Ct. 629, 83 L.Ed. 940, if the case involves rights which are contrary to local public policy, Griffin v. McCoach, 313 U. S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Pink v. A. A. A. Highway Express, Inc., 314 U. S. 201, 62 S.Ct. 241, 86 L.Ed. 152, 137 A.L.R. 957; Order of United Commercial Travelers v. Meinsen, 8 Cir., 131 F.2d 176; Anthony P. Miller, Inc. v. Needham, 3 Cir., 122 F.2d 710; Boyle v. Ward, 3 cir., 125 F.2d 672; Kroger Grocery & Baking Co. v. Reddin, 8 Cir., 128 F.2d 787; Transit Bus Sales v. Kalamazoo Coaches, 6 Cir., 145 F.2d 804; Metropolitan Life Ins. Co. v. Haak, D. C., 50 F.Supp. 55.

■ The issue of law arising out of the limitation clause in this contract of insurance does not arise under the Federal Constitution nor under any act of Congress. The defendant was, at the time it issued its certificate of membership to the insured, and at all times since has been, authorized to do business in this state as a foreign insurance corporation. The insured was a citizen of this state when he was insured by defendant, and remained such a citizen until the time of his death. The beneficiary was a resident of this state when the certificate of insurance was issued, and she has been such resident ever since. The insured died within this state, and the cause of action arose here. The action therefore relates to persons and events within this state.

The right of defendant to claim that the action is barred in this state by the terms of the contract, conflicts with SDC 10.0705, quoted herein. That statute was considered in the case of Vesey v. Commercial Union Assur. Co., supra. It was held in that case that, under this statute, any stipulation in a contract which limits the time within which a party may enforce his rights thereunder, is absolutely void. That this statute is applicable to a contract made

in another state and upon which an action is brought in this state was decided in the case of L. D. Powell Co. v. Larkin, 52 S. D. 245, 217 N. W. 200, 202. There the question presented was whether an action could be brought in this state on a Nebraska contract barred by the Nebraska statute of limitations before the debtor left that state. The court said: "It is the general rule and the weight of authority that a statute which merely limits the time within which action may be brought upon a contract affects the remedy only, and not the right, and can have no extraterritorial effect, and will not prevent action upon the contract thereafter in the forum of some other state unless a statute of the forum so provides. * * * Whether action on the contract is barred by lapse of time must therefore be determined for the purposes of this action by the laws of South Dakota, the state of the forum, without reference to the Nebraska statute or to the existence of a bar in Nebraska."

See also Order of the United Commercial Travelers v. Meinsen, supra; Dinnie v. United Commercial Travelers, 41 N. D. 42, 169 N. W. 811; Avondale v. Sovereign Camp W. O. W., 134 Neb. 717, 279 N. W. 355; Erickson v. Order of United Commercial Travelers, 103 Kan. 831, 176 P. 989; Sternheimer v. Order of United Commercial Travelers, 107 S. C. 291, 93 S. E. 8; Hawkinson v. Order of United Commercial Travelers, Tex. Civ. App., 20 S. W.2d 101.

Therefore the defendant's claim that this action is barred by the contract is contrary to the public policy of this state. So far as the Federal Constitution is concerned, the courts of this state are free to apply the statutes and decisions of this state in determining this issue.

■ Neither is this question ruled by the "due process" clause contained in the Fourteenth Amendment to the United States Constitution as that clause was interpreted and applied in Home Ins. Co. v. Dick, 281 U. S. 397, 50 S. Ct. 338, 74 L. Ed. 926, 74 A. L. R. 701, and in the case of Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U. S. 143, 54 S. Ct. 634, 78 L. Ed. 1178, 92 A. L. R. 928. The Supreme Court held the "due process" clause applicable in those cases because under the facts, there was no occurrence

in the state of the forum to which its laws could apply, and consequently there was no question of conflict of laws involved. This distinction is pointed out in John Hancock Mut. Life Ins. Co. v. Yates, 299 U. S. 178, 57 S. Ct. 129, 81 L. Ed. 106.

Appellant also cites Supreme Council Royal Arcanum v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771; Modern Woodmen of America v. Mixer, 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384; Sovereign Camp W. O. W. v. Bolin, 305 U. S. 66, 59 S. Ct. 35, 83 L. Ed. 45, 119 A. L. R. 478. In those cases the United States Supreme Court held that a certificate of membership in an incorporated beneficiary society establishes a complex and binding relationship, and that the rights and obligations of the members and of the society are governed by the laws of the state of incorporation, as those laws are defined and interpreted by its courts. That rule was established before the decisions in Pacific Employers Ins. Co. v. Industrial Accident Comm., supra, and in the Klaxon, Griffin and Pink cases. Apparently the rule is limited by these later decisions to cases which do not relate to persons and events within the state of the forum, and in which, therefore, no question of conflict of laws is presented.

There is a further distinction. Those cases related to substantive rights and obligations of the society and its members under the insurance certificate. Here the question is in no way related to the validity of the insurance contract. It has to do with the remedy only, and in such matters the courts of the forum are free to apply the rules of the forum, notwithstanding the "full faith and credit" or "due process" clauses of the United States Constitution. Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104; Klaxon Co. v. Stentor Electric Mfg. Co., supra; 37 C. J., Limitation of Actions, §§ 46 and 47.

Appellant also claims that the plaintiff is bound by the decisions of the Circuit Court of Appeals, Order of United Commercial Travelers v. Shane, 8 Cir., 64 F. 2d 55, and is therefore estopped from claiming that the death of Shane was occasioned by external, violent and accidental means, as provided in the insurance certificate.

After the case was reversed by the Circuit Court of Appeals and before final judgment was entered in the District Court, the action was dismissed without prejudice, on stipulation of the parties. There never was a final judgment adjudicating the rights of the parties in the federal courts. The decision of the Circuit Court of Appeals established the law of the case as to all subsequent proceedings in that action in the federal courts. However persuasive that decision might be on the questions decided, it does not govern the disposition of a new action for the same cause, brought in the state courts. Wells v. Western Union Telegraph Co., 144 Iowa 605, 123 N. W. 371, 24 L. R. A., N. S., 1045, 138 Am. St. Rep. 317; Belue v. United Commercial Travelers, 121 S. C. 179, 117 S. E. 591; Spring Valley Coal Co. v. Patting, 210 Ill. 342, 71 N. E. 371; 21 C. J. S., Courts, § 205, p. 365.

Appellant also assigns as error the decision of the circuit court to the effect that Shane's death was the result of external, violent and accidental means. The appellant's first contention under this assignment is that the rights and obligations of the members of the association under their contracts are governed by the laws of Ohio as defined and interpreted by the courts of that state.

■ This question is one of substantive right under the terms of a certificate of membership in a fraternal benefit society incorporated under the laws of Ohio. The laws of South Dakota do not conflict with the laws of Ohio as to this issue. Consequently the laws of Ohio will be observed, to the extent that they are found to be determinative of this question. Supreme Council Royal Arcanum v. Green, supra; Modern Woodmen of America v. Mixer, supra; Sovereign Camp W. O. W. v. Bolin, supra.

Many courts make a distinction between accidental means and accidental results. The case most often cited by the courts and followed in Ohio is United States Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 762, 33 L. Ed. 60. In that case the insured and two companions jumped from a platform four or five feet high at the same time and place. The companions alighted safely, but the insured suffered a stricture of the duodenum from which he died. The question was whether the insured died as a result of

accidental means, and the court said: "* * * If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusal, occurs which produces the injury, then the injury has resulted through accidental means."

Another case cited in the Ohio decisions is Landress v. Phoenix Mut. Life Ins. Co., 291 U. S. 491, 54 S. Ct. 461, 462, 78 L. Ed. 934, 90 A. L. R. 1382. In that case the facts were that the insured died as a result of a sunstroke suffered while playing golf. There the court made a restatement of the rule in the following language: "But it is not enough, to establish liability under these clauses, that the death or injury was accidental in the understanding of the average man—that the result of the exposure 'was something unforeseen, unsuspected, extraordinary, an unlooked-for mishap, and so an accident,' (cases cited) for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental."

The court held in that case that there was nothing in the sun's rays which was unknown or unforeseen by the insured, and denied liability under the policy.

In the case of New Amsterdam Casualty Co. v. Johnson, 91 Ohio St. 155, 110 N. E. 475, L. R. A. 1916B, 1018, the insured took a cold water plunge after a horseback ride. This caused an acute dilation of the heart and a long period of disability. The Ohio Supreme Court held: "Heart dilation following the taking of such bath when heated is a natural result from a natural cause"—and that, as a matter of law, injury did not result from accidental means. The difficulty of apply the rules is acknowledged by the court in the following statement: "The separation of injuries occasioned by accidental means from those occasioned by means nonaccidental is not free from difficulty, and an attempt to logically analyze every supposable case of this

character and differentiate along consectary lines would lead to some contradictions."

The next Ohio case is Burns v. Employers' Liability Assur. Corporation, 134 Ohio St. 222, 16 N. E. 2d 316, 117 A. L. R. 733. There the question was whether amoebic dysentery contracted from infected drinking water is a bodily injury caused by accidental means, or a disease. The court approved the Barry and Landress cases, and held that in the case under consideration the injury was not accidental.

The Ohio Supreme Court next decided the case of Mitchell v. New York Life Ins. Co., 136 Ohio St. 551, 27 N. E. 2d 243, 245. There the insured connected a tube to a faucet and used it to administer an enema to himself thereby bursting the sigmoid which caused his death. The court concluded that under the facts shown, the means were "voluntarily and intentionally employed and in the manner intended", and that means which are thus employed are not accidental.

In the case of Hassay v. Metropolitan Life Ins. Co., 140 Ohio St. 266, 43 N. E. 2d 229, the court considered a case in which the insured was killed in an explosion which wrecked a vacant house owned by him. Action was brought to recover on an accident policy. The defense claimed that the insured voluntarily and intentionally employed the means which produced his death. That is, that he caused the explosion which wrecked the house and killed him. The jury brought in a verdict for defendant and the case was affirmed on appeal.

From these cases it may be fairly concluded that the rule announced in the Barry case, as quoted herein, is the rule in Ohio. However, there seems to be no Ohio case in which the rule has been applied to a case where a drug was injected into the body of the insured for the purpose of inducing anesthesia. The rule in such cases, established by the decisions of courts in many jurisdictions, is that, if the natural and probable effect of the drug as administered, is to induce an anesthesia without injury to the patient, and if the patient dies as a result, because of an unforeseen and unexpected idiosyncrasy, or an unusual susceptibility to the drug, then the administration of the drug was the cause of

the death and the death was produced by accidental means. Mutual Life Ins. Co. v. Dodge, 4 Cir., 11 F.2d 486, 59 A. L. R. 1290; Taylor v. New York Life Ins. Co., 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959; Wheeler v. Title Guaranty of America, 265 Mich. 296, 251 N. W. 408; Whatcott v. Continental Casualty Co., 85 Utah 406, 39 P.2d 733; Denton v. Travelers Ins. Co., D. C., 25 F. Supp. 556; Vollrath v. Central. Life Ins. Co. of Illinois, 243 Ill. App. 181; Schleicher v. General Accident, Fire & Life Assur. Corporation, 240 Ill. App. 247. Since these decisions are based on the rule established in the Barry case, and since Ohio appellate courts follow that rule, we must assume that they would make a similar application of the rule in anaesthetic cases.

▮ There is also a rule of presumption or inference which is applicable to cases involving the question of accidental means. For example, in the Barry case the only evidence of anything unexpected or unforeseen in the jump made by insured was that it sounded to his companions as if he came down heavily on his heels. Justice Blatchford said: "It must be presumed, not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not."

The judgment for the plaintiff was affirmed. In the Landress case the court said: "Nor do we say that in other circumstances an unforeseen and hence accidental result may not give rise to the inference that the external means was also accidental."

In the Ohio case of Hassay v. Metropolitan L. Ins. Co., supra, the court said [140 Ohio St. 266, 43 N. E. 2d 231]: "'* * * Upon a showing of death by external and violent means, the law raises a presumption that death was accidental and, upon such showing aided by the presumption a prima facie case for plaintiff is made; and that the presumption remains in the case until it is overcome by evidence to the contrary. * * * A presumption of this kind is a rebuttable one, disappearing upon the production of evidence disclosing ꞌthe opposite. * * * 'And the amount of evidence required to overcome the presumption in a given case will, in general, depend on the good sense of the jury, sub-

ject, of course, to such instruction from the court, as the case may require.' "

 Plaintiff's evidence in this case was that butyn, the anesthetic, was injected into the body of insured. This was external and violent means. The evidence also shows that death resulted therefrom and that such result was unexpected and unforeseen. The result was therefore accidental. From these facts the trial court had the right to infer that the means were also accidental. The only evidence introduced in this case by the defendant to overcome the case established by plaintiff's evidence is proof that insured voluntarily submitted himself to his physician for examination and consented that a local anesthetic be administered; that butyn was administered in accordance with proper medical practice for the relief of pain; that the proper amount and strength of the drug was used; that the insured had an idiosyncrasy toward butyn; that unexpected and injurious results followed the administration of the drug; that such a result is so rare that physicians give it no consideration as a possibility. Appellant does not dispute that the injection of the drug must be considered as external and violent nor that the result was accidental. The evidence introduced by defendant is therefore insufficient to overcome the prima facie case made by the evidence of the plaintiff.

These conclusions preclude the theory that the death of insured resulted from medical or surgical treatment, or from the intentional taking of medicine or drugs.

For the reasons stated the judgment of the circuit court is affirmed.

ROBERTS and RUDOLPH, JJ., concur.

SMITH, P. J., dissents.

POLLEY, J., not sitting.