S. B. CURRY, RESPONDENT, v. FEDERAL LIFE INSURANCE COMPANY, APPELLANT.*

Kansas City Court of Appeals. May 24, 1926.

*Corpus Juris-Cyc References: Accident Insurance, 1CJ, p. 427, n. 45; p. 508, n. 12; Evidence, 22CJ, p. 267, n. 84; p. 670, n. 10; p. 671, n. 13, 16; Involuntary, 33CJ, p. 812, n. 13; Pleading, 31Cyc, p. 86, n. 46; Trial, 38Cyc, p. 1542, n. 66.

*Platt Hubbell* and *George H. Hubbell* for respondent.

*George E. Woodruff*, *Ross J. Ream* and *Denton Dunn* for appellant.

ARNOLD, J.—This is a suit to recover upon a policy of accident and health insurance.

Defendant is a corporation organized and existing under the laws of the State of Illinois, with its principal office in the City of Chicago, and operating in the State of Missouri under the provisions of the laws thereof.

April 5, 1921, defendant issued to plaintiff, a resident of Grundy county, Missouri, its certain accident policy of insurance, in consideration of the stipulated premium mentioned therein, whereby, among other things, it agreed to pay plaintiff the sum of $2250 in the event of the loss of one hand, at or above the wrist joint, provided said loss was effected directly and independently of all other causes, through external, violent and accidental means. In the month of April, 1924, by surgical operation, plaintiff sustained the loss of his left hand above the wrist joint.

On April 22, 1924, plaintiff was in St. Mary's Hospital in Jefferson City, Mo., where he had recovered from an operation for hernia performed on the 3d day of said month. The record shows that in the afternoon of April 22d, plaintiff was testing his strength preliminary to leaving said hospital the following morning and in doing so, plaintiff placed himself on the side of the bed and stood with his feet upon the floor; but, finding a table so close to him as to interfere with his purpose, plaintiff endeavored to push it aside and while so pushing the table aside with his right hand, one of the rollers or legs of the table caught on the floor, the table tilted and started

to fall. In order to prevent the table—upon which were some glasses —from falling, plaintiff, by a quick movement, grabbed the table with his left hand. Immediately thereafter, he felt a pain in his left shoulder and arm and there soon appeared swelling and discoloration in said member, followed by gangrene and paralysis.

Doctor Aldridge who had performed the hernia operation was called on the day following the incident just related and the conditions he found may best be described in his own language contained in his deposition read in evidence, as follows:

"About as near as I can remember, late in the afternoon I was called to the hospital for an emergency for Mr. Curry. That was April 23rd that I was called. Yes, on the 23rd I was called for an emergency for Mr. Curry. There I found the circulation of his left arm was entirely absent. We decided to watch the condition for a few hours. The following morning we found a progressive condition due to the obstruction of an artery, causing beginning gangrene of the arm. This circulation was destroyed up to about five or six inches of his shoulder. We decided to remove the arm that evening which we done and found the *brachial* artery obstructed about six inches below the shoulder. We amputated the arm at this location. This amputation was followed by a good operative recovery. That is about all there was to it as far as the operative record went."

The petition alleges that the sudden action or quick movement of plaintiff's left hand and arm in endeavoring to stop the fall of the table was involuntary, and that this unusually quick movement and unusual exertion caused a blood clot, or *embolus,* to dislodge from the valves of the heart and lodge in an artery of plaintiff's left shoulder, stopping up and clogging said artery and rendering necessary the amputation of plaintiff's arm, between the elbow and shoulder, "and by reason of all of the aforesaid facts, the loss of the plaintiff's left hand and left arm was effected directly and independently of all other causes, through external, violent and accidental means," within the terms of the policy.

Written notice of plaintiff's claim, together with information relative thereto, was sent to the insurance company. Considerable correspondence between the parties ensued with the result that defendant denied all liability under the policy excepting the sum of $56.43, covering twenty days disability while plaintiff was confined in the hospital. The receipt on the back of the check for this amount specified that the check was "in full payment, satisfaction, discharge and release of all claims accrued or to accrue from disability by illness commencing April 22, 1924." Plaintiff refused to accept this check. Upon defendant's denial of liability on account of the loss of plaintiff's hand and arm, this suit was instituted.

The petition alleges the matters summarized in the above statement of facts and seeks judgment in the sum of $2250 for loss of the arm and hand, with six per cent interest from date of filing the suit, together with ten per cent statutory penalty for vexatious delay and $500 for attorney fees. The answer is a general denial. The cause was tried to a jury and resulted in the following verdict:

"We, the jury, find for the plaintiff, and find for him in the sum of ($2250) twenty-two hundred and fifty dollars, as principal or original amount of insurance, and find for him, in the sum of ($135) one hundred thirty-five dollars, as one year's interest at six per cent (6%).

"We further find that the plaintiff is entitled to a reasonable attorney's fee, which we assess at ($300) three hundred dollars.

HENRY OVERTON, as Foreman."

Judgment for plaintiff was accordingly entered in the sum of $2685. Motions for a new trial and in arrest were unavailing and defendant appeals.

It is urged that the court erred in refusing the defendant's peremptory instruction in the nature of a demurrer, at the close of all the evidence. The principal ground upon which defendant urges this charge of error is, that there was no legal proof of the cause alleged in the petition, of the blood clot which necessitated the amputation of plaintiff's arm, and that this cause was an intentional act of plaintiff, not constituting accidental means within the terms of the policy, even though followed by an unexpected result, which was the release of the blood clot by the voluntary exertion of plaintiff upon first arising from the bed following the operation for hernia; that proof of accidental means is required upon the policy, rather than a mere showing of an unexpected result of an intended means or cause.

Defendant vigorously urges that the rule applicable to the facts just stated, as declared by the latest utterance of the Supreme Court on this point, in Caldwell v. Insurance Co., 305 Mo. 619, 267 S. W. 907, precludes plaintiff's recovery herein. The question thus presented we consider the main issue in the case, and, as we see it, the constroversy resolves itself into the proper construction of the word "means" as used in the policy, to-wit, "accidental means." It is urged that plaintiff pleaded and tried his cause upon a confusion of the terms "accidental result" with "accidental means." On the contrary, it is the contention of plaintiff that the petition properly charges and the proof shows that the means by which the blood clot was released was the "involuntary" act of plaintiff in grabbing the toppling table with his left hand; that the exertion thus applied was involuntary and therefore accidental. In the Caldwell·case the Supreme Court very carefully and ably explains the distinction between

accidental means and accidental result, and holds that the word "means" as used in the policy in that case means "cause" and that an accidental result is not equivalent to an accidental cause; and that if, in order to recover on an accident insurance policy, the beneficiary must show that the death or injury of the assured resulted from accidental means, it must be shown that the means which produced the injury, or death, was accidental and not simply that the result was unforeseen and unexpected; that the rule announced in certain cases that where the injury or death is the unusual, unexpected and unforeseen result of an *intentional* act, such injury or death is by accidental means, even though there is no proof of mishap or slip in the act which caused it, is not correct; that the true rule is that where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act, where no mishap, mischance or slip occurred in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must be made to appear that the means used to produce the injury was accidental, and it is not enough that the result may be unusual, unexpected or unforeseen. With this rule before us it remains for us to solve the question as to whether the evidence was sufficiently substantial to take the case to the jury on the issue of accidental means.

We need not pause here to restate the rule that in the consideration of a demurrer, we must consider only plaintiff's testimony and give him the benefit of all reasonable intendment therefrom. As already stated, it is plaintiff's contention that the sudden movement of his left arm in the act of preventing the table from falling was purely involuntary and therefore this case does not come within the rule announced in the Caldwell case.

Plaintiff insists there were three physical movements involved in the accidental means which caused him to lose his arm, viz.: *First*, the movement by plaintiff in pushing or shoving the table. He testified: "This table was sitting right up to the bed, I took my hand shoved it back that way (indicating);" *second*, that after standing for about a minute, he prepared to lie down again and then pulled or jerked the table toward the bed, when the table tilted and started to fall. He was asked: "Q. Well, you grabbed the table? A. I started at it this way (indicating) I gave it a jerk and it went like that (indicating) and I grabbed it with my left hand unthoughtedly: I didn't intend to take hold of it with both hands, I took hold of it with my right hand to pull it and it went to tip and I grabbed it with the left hand, and it isn't there now, and I straightened up the table and left it there and laid down in bed." *Third*, that plaintiff's act in grabbing the table was involuntary. He stated "I done it to keep the table from falling unthoughtedly, same as it had been a little child if I was near enough to grab and catch it, that's all, I had no intention, as an impulse hit you or anyone else." Further, he stated,

"it was a quick movement . . . when it started to tip I grabbed it just like that (snapping his fingers.) It was on the impulse of the moment."

The theory advanced by plaintiff in his brief is: "The table accidentally tilting and starting to fall, plus the involuntary grabbing of the table, the sudden involuntary clutching of the table, and the accompanying unusual exertion, caused a blood clot to dislodge from the left side of the heart of plaintiff, finally lodging in the left *brachial* artery, causing paralysis and gangerne of plaintiff's left arm, rendering amputation necessary."

From this foundation it will be seen the plaintiff builds his case, upon the theory that the sudden clutching of the falling table with his left hand was an involuntary and sudden exertion and was the "accidental means" relied upon for recovery. An involuntary act "is that which is performed with constraint, or with repugnance, or without the will to do it. An action is involuntary which is performed under duress." [Bouvier's Law Dict., Vol. 2, p. 1682.]

The petition charges:

"Involuntarily and without having time to think what he was doing, the plaintiff by an unusually quick movement and by unusual exertion, caught said standtable to keep it from falling, which unusually quick movement and unusual exertion in so moving said standtable, caused a blood clot or *embolus* to dislodge and come from the valves of the heart of the plaintiff, which blood clot or *embolus* lodged in an artery of the plaintiff's left shoulder and left arm, thereby forming what medical men call a "*thrombosis*' stopping up and clogging the said artery."

Webster's New International Dictionary defines "involuntary" as "not having will or power of choice;" "not under the influence or control of the will," . . . "not proceeding from choice." "An action or movement opposed to volition or desire." "Impulse" is defined as an "act of impelling, or driving onward with sudden force; impulsion; esp. force so communicated as to produce motion suddenly or immediately . . . an incident of the mind or spirit especial in the form of an abrupt and vivid suggestion, prompting some unpremeditated action or leading to unforeseen knowledge or insight; a spontaneous inclination arising either directly from feelings or from some other influence."

Applying the well-known rule that courts are required to give to words their ordinary meaning, as used by the average person, to the construction of the language of the petition and the testimony of plaintiff, we must conclude that the testimony on the point now at issue was of sufficient substantiality to take the case to the jury. And we think this holding not in conflict with the opinion in the case of Caldwell v. Insurance Co., supra. There is a marked dis-

tinction between the facts of that case and the one before us. There, the insured had undergone an operation for hernia at his own volition. The operation was skilfully and well done; five days later he underwent a second operation, also at his own volition, in an effort to save his life then threatened by an obstruction of the bowels, possibly the unexpected results of the operation skilfully performed. The death of the insured occurred five days later from the said obstruction of the bowels. In this situation the Supreme Court held that the result and not the means was accidental, and that before the plaintiff could recover, she must offer substantial evidence tending to show that her husband's death resulted ''from bodily injuries . . . through external, violent and accidental means.'' In the case at bar, plaintiff charges and there was substantial evidence tending to show that the means by which the blood clot was released was the involuntary act of grabbing the table with his left hand, and that the exertion attending this effort caused the blood clot to be released. We do not consider the Caldwell case controlling here.

It is also urged that the court erred in overruling defendant's objection to plaintiff's questions in the deposition of Dr. Aldridge as to what, in his opinion, caused the blood clot to be sent from plaintiff's diseased heart lining, because not calling for hypothetical answers of an expert witness, but for a conclusion of fact based on hearsay, not *res gestae*. And it is urged that there was, therefore, no legal evidence as to which of several causes sent out the *embolus*, and that the judgment is the result of inference upon inference.

Dr. Aldridge was plaintiff's surgeon. He performed the operation for hernia and was plaintiff's physician in his convalescence therefrom. He was called when the pain in the arm appeared which was followed by the disastrous results. It is the rule that while a physician's opinion based, even in part on statements made to him by the patient, is sometimes excluded as hearsay, the great weight of authority is that the opinion of a physician is not rendered inadmissible by the fact that it is based wholly, or in part, on statements made to him by the patient if these statements were made in the course of professional treatment of the patient's condition at that time and with a view to effecting a cure. There was no attempt by the witness to repeat what plaintiff had told him, but the opinion of the doctor was based, in part, on what plaintiff told him of a previous occurrence. Defendant's objection to the evidence was directed to the point that the same was hearsay, that is to say, that it was based partly on the history of the case. In his deposition Dr. Aldridge testified that, based on the history of the case, i. e. on what plaintiff told him as to what occurred when the table was pushed over and of the symptoms present afterwards in his arm and shoulder, it was the Doctor's opinion that ''the exertion plaintiff made at the time

that he reached to the table" caused the blood clot to be dislodged and sent from the diseased heart lining. The admission of this evidence was error.

It is the rule that a physician may properly testify to statements made by the patient relating to his condition at the time, but statements relating to a past condition or circumstances surrounding the receipt of an injury, or the manner in which it was received, are not admissible. [Freeman v. Ins. Co., 195 S. W. (Mo. App.) 545; Brady v. Traction Co., 140 Mo. App. 421, 124 S. W. 1070; Poumourle v. Telegraph Co., 167 Mo. App. 533, 537, 152 S. W. 114; Holloway v. Kansas City, 184 Mo. 19, 39, 82 S. W. 89.] We have a case with this question involved, Murphy v. Ry. Light, Heat & Power Co., decided by this court at this term, not yet reported, to which we refer for fuller discussion of this point. [Kinchlow v. Railroad, 264 S. W. (Mo.) 416, 1. c. 421; Magill v. Bank, 288 Mo. 489; Aronovitz v. Arky, 219 S. W. (Mo.) 620.] We hold the admission of this evidence constituted reversible error. The judgment is reversed and the cause remanded for another trial. *Bland, J.,* concurs; *Trimble, P. J.,* absent.