NELLIE VIRGINIA OTEY *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY

and

MRS. NELLIE OTEY *v.* EDUCATORS BENEFICIAL ASSOCIATION

(No. 8767)

Submitted September 7, 1938. Decided September 27, 1938.

*Sale, St. Clair & Sale* and *Graham Sale, Jr.,* for plaintiffs in error.

*Howard & Howard,* for defendant in error.

FOX, JUDGE:

This case is one involving an intentional act of a physician and surgeon, affecting a patient in his charge who

voluntarily submitted herself to his care, and where the result of treatment rendered, involving the administration of an anesthetic preparatory to a surgical operation, was different from that intended or expected, and from which the patient died. The question is whether the death resulted from accidental means under the terms of insurance policies hereinafter quoted.

Bonnie Louise Otey died on the 15th day of July, 1937, in a hospital in Welch, West Virginia, while being prepared for an operation for removal of her tonsils. She was twenty-five years old, in apparent good health, except for the diseased tonsils, and the necessary and usual examination had been made as to her general condition and she was found able to undergo the proposed operation. A local anesthetic was decided upon, and novocaine was administered through a hypodermic syringe by infiltering the tissue around the tonsils. While the treatment was being given, but before the usual amount of the drug used in such cases had been injected, those present noticed that it was having an unusual and unexpected effect on the patient; her pulse weakened, she became pale, her body began to show a bluish cast and her breathing became irregular. Every known means to combat her condition was resorted to without avail, and she died within a few minutes. It is undisputed that her death resulted from the injection of novocaine, due to what medical witnesses term her hypersusceptibility or hypersensitivity to the drug used. No question is raised as to her having voluntarily submitted to the care of her physician and surgeon for the operation; or as to the prudent and skillful administration of the drug; or that the surgeon intended to administer and the deceased to receive the drug in the manner and for the purpose for which it was used.

The deceased was the holder of two policies of insurance, one a life insurance policy for $1,000.00, issued by the John Hancock Mutual Life Insurance Company, with a supplemental contract provision for accidental death or injury under which the beneficiary of the insured was

entitled to an additional $1,000.00 in case of death "as the result of bodily injury received after this contract becomes effective, caused solely by external, violent and accidental means of which there is a visible wound or contusion on the exterior of the body (except in case of drowning or of internal injuries revealed by an autopsy) * * * ." It should be noted that the company paid the $1,000.00 due under the regular life policy. The second was an accident insurance policy, issued by the Educators Beneficial Association, under which the beneficiary of the insured was entitled to be paid the sum of $1,-000.00 in case of death resulting solely from "bodily injuries caused directly, exclusively and independently of all other causes from external, violent and purely accidental means, and in cases other than drowning there should be visible contusion or wound on the exterior of the body."

The mother of the insured, designated Nellie Virginia Otey in the first policy and Mrs. Nellie Otey in the second, was named as the beneficiary in both; and she instituted actions against the two companies which were tried together in the circuit court of McDowell County before a jury, with a special judge presiding, which trial resulted in verdicts for the plaintiff as against the respective defendants. A motion made in each case to set aside the verdict therein was overruled and judgments entered against the respective defendants, to which they jointly and separately prosecute this writ of error.

The points of error relied on by the defendants are (1) that the death of the insured was not caused by external, violent and accidental means; and (2) there was no visible wound or contusion on the exterior of the body of the insured.

In the briefs filed the first assignment of error is narrowed to the question of whether death resulted from accidental means. The question as to the absence of external force or violence is not pressed, and, therefore, requires no extended discussion. It will suffice to state

the general rule as given in 14 R. C. L., p. 1249, section 427:

"Where a policy covers injuries by external, violent 'or' accidental means, the disjunctive is given effect and it is not necessary that the means be accidental, if they are violent. Where, however, as is frequently the case, a policy provides for indemnity for injuries inflicted by external, violent and accidental means, to support a recovery it must be shown not only that the means were external and violent, but also that they were accidental. It has been said that unnatural death, the result of accident of any kind, imports an external and violent agency as the cause within the meaning of an insurance policy limiting recovery to death caused through 'external, violent, and accidental means.' The provision that the means be external and violent is satisfied where death results from involuntary drowning, or by accidentally taking a substance internally, as by accidentally taking poison, or by the entry of food into the windpipe while eating. If the death of the insured is caused by blood poisoning, superinduced by the bite or sting of an insect, such death is caused through external, violent, and accidental means, within the meaning of an accident insurance policy, and the same is true where death was produced by a ruptured blood vessel about the heart, caused either by fright or resulting from extraordinary mental or physical exertion put forth by the deceased to save himself from injury when in imminent peril brought about by accident. Sunstroke, however, has been considered not to fall within a policy so providing."

The question of what are "accidental means" is one on which there is a sharp division of authority. The contention of the plaintiff is that if the use of the drug resulted in something unforeseen and unexpected, the death of the insured resulted through accidental means, notwithstanding the fact that the drug was injected by the physician intentionally, and with the consent of the insured. This theory is an outgrowth of the holding in

the case of *United States Mutual Accident Association* v. *Barry,* 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60. In this case Dr. Barry intentionally jumped from a platform to the ground, following the same act on the part of two of his companions, but, for some unforeseen and unexpected reason, he suffered an injury from which he later died. The Court, in passing upon the case, said:

> "The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected'; that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In *Vollrath, Admr.,* v. *Central Life Insurance Company,* 243 Ill. App. 181, the theory of the *Barry* case was applied, where death was caused by paralysis of the respiratory organs resulting from the administration of ether in preparation for an operation to remove tonsils of the patient apparently in suitable condition for such operation, and it was held death by accidental means within the terms of a double indemnity clause of a policy of life insurance, wherein the payments were confined to death "from bodily injuries effected solely through external, violent and accidental causes." To the same effect is the case of *Taylor* v. *New York Life Ins. Co.,* 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959, where a surgeon, in preparation for removal of the in-

sured's tonsils, administered novocaine which, because of her unknown hypersusceptibility to the drug, caused her death. The same holding was made in the case of *Wheeler* v. *Title Guaranty & Casualty Company*, 265 Mich. 296, 251 N. W. 408, in which the death of a patient, due to a surgeon's administration of nupercaine and the patient's hypersusceptibility to this drug, was held to have been effected by accidental means within a policy which provided the payments for death due to accidental bodily injuries. In *Mutual Life Ins. Co.* v. *Dodge,* 11 Fed. (2d) 486, 59 A. L. R. 1290, the circuit court of appeals of the fourth circuit held that death resulting from the use of novocaine administered for a surgical operation, due to an idiosyncrasy on the part of an insured, was one by accidental means within the meaning of a policy providing for death payments where death results from bodily injury effected solely through external, violent and accidental means, and not directly or indirectly from infirmity or disease. This holding is made principally upon the authority of the *Barry* case, *supra.*

On the other hand, the weight of authority appears to be that death resulting from a skillful surgical operation, where there has been an unexpected result, is not a death brought about by accidental means within the meaning of insurance policies such as we have under consideration in the case at bar. In *Caldwell* v. *Travelers' Insurance Company,* 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56, it was held that the unusual and unexpected obstruction of a patient's bowels, by skillful operation for hernia causing his death, was not within a policy insuring against death from bodily injuries effected directly through external, violent and accidental means. In *Zach* v. *Fidelity & Casualty Company* (Mo.), 272 S. W. 995, a case in which the policy insured against death by accidental means, it was held upon the authority of the *Caldwell* case that the death of the insured, resulting from the skillful extraction of a tooth, though unexpected and unusual, was not an accident within the meaning of

the policy. See also *Pope* v. *Prudential Life Ins. Co.*, 29 Fed. (2d) 185.

Cases are cited bearing upon the intent surrounding an act from which injury or death results. In *Clarkson* v. *Union Mutual Casualty Co.*, 201 Iowa, 1249, 207 N. W. 132, it was held that in a policy compensating disability resulting from accidental means, the means must have been involuntary and unintentional, and it was not sufficient that there was an accidental and unusual or unanticipated result only. In *Bahre* v. *Travelers' Protective Association*, 211 Ky. 435, 277 S. W. 467, it was held that an injury was not the result of accidental means where it was a direct though unexpected result of an ordinary act in which the insured intentionally engaged. See also *Curry* v. *Federal Life Ins. Co.*, 221 Mo. App. 626, 287 S. W. 1053. In *Riley* v. *Interstate Business Men's Accident Association* (Iowa), 152 N. W. 617, the distinction between an accidental result and an accidental cause is discussed, and it was held that, for recovery under a policy insuring against death through external, violent and accidental means, the cause of the death must be accidental, and such does not occur when an unanticipated or unforeseen result is caused by a voluntary and intentional act of the party suffering that result.

In *Landress* v. *Phoenix Mutual Life Insurance Co.*, 291 U. S. 491, 54 S. Ct. 461, 78 L. Ed. 934, 90 A. L. R. 1382, it was held that where death resulted from a sunstroke "It is not enough to establish liability under a policy insuring against death or injury through accidental means, that the death or injury was the unforeseen, unexpected, and extraordinary result of a non accidental cause", and in commenting on the case the court said: "This distinction between accidental external means and accidental result has been generally recognized and applied where the stipulated liability is for injury resulting from an accidental external means", and cases are cited in support of this proposition, although the *Dodge* case, *supra,* is cited to the contrary. The *Landress*

case is chiefly important because it seems to disagree with the theory upon which the holding in the *Dodge* case is based, this in face of the fact that a writ of *certiorari* was refused by the Supreme Court of the United States in the *Dodge* case.

There is also a line of cases covering the administration of anesthetics in surgical operations. In *Westmoreland* v. *Preferred Accident Insurance Company,* 75 Fed. 244, recovery was denied upon a policy of insurance against death from injury caused by external, violent and accidental means, where a physician administered chloroform to an insured in a proper way, from which he died. In *Barnstead* v. *Commercial Travelers' Mutual Accident Association,* 198 N. Y. S. 416, a dentist, at the insured's request, administered nitrous oxide gas which, because of the insured's abnormal condition, resulted in death, and it was held that a policy which insured against death by external, violent and accidental means did not cover the case, and recovery was denied. In *Hesse* v. *Travelers' Ins. Co.,* 299 Pa. 125, 149 Atl. 96, it was held, under a like policy, that death resulting from the administration of an anesthetic due to the hypersusceptibility of the patient to the same was not an accidental death, and recovery was denied. There was dissent on the part of three judges, and the *Barry* case, *supra,* and the *Dodge* case, *supra,* were both cited in the dissenting opinion. In *United Commercial Travelers Ass'n* v. *Shane,* 64 Fed. (2d) 55, it was held that death, resulting from insured's unknown idiosyncrasy to an anesthetic, normally harmless, administered as a local anesthetic in proper quantity, was not accidental and recovery was denied. In the *Westmoreland* and *Shane* cases the fact that the policies did not cover accidents resulting from surgical treatment was considered and held to bar recovery, but the question of "accidental means" was clearly determined as stated above.

The case is one of first impression in this state. We have cited the authorities on the question involved to show the different viewpoints, and we must adopt the

view which best represents our idea of the proper rule. That the result of the means employed by the surgeon in administering the anesthetic was unusual and unexpected is clear from the evidence, but were those means accidental? The surgeon did exactly what he intended to do, namely, administer novocaine, and the patient invited and therefore consented to its use. Can it be said that the means employed, under such circumstances, were accidental? We think not. The result was not one which was contemplated or expected, and came about from an unknown and unascertainable hypersusceptibility of the patient to the drug employed. Was that result different from that which so frequently occurs in surgical operations, where something unexpected happens, such as blood poisoning, heart failure and other complications from which death results? True, the hypersusceptibility herein considered is rare, but it exists, and must be reckoned with. Can the fact that it is rare and unusual be held to make its appearance an accident? In this day of expert surgery, unfavorable developments, especially in minor operations such as that involved in this case, are rare; and yet they occur, are unexpected, and in most instances, result from some latent weakness of the body rather than from the operation itself. It is argued that the death of the insured may be said to be an accident from the fact that the surgeon did not intend to inject the novocaine into a body which was hypersensitive to the drug, and that the patient would not have submitted to the injection had she known such to be true; but may it not also be said that a surgeon never intends to administer an anesthetic calculated to bring about the death of a patient, nor the patient to receive it. Every surgical operation, however simple, involves some risk, and the fact that the risk is slight does not convert into an accident an unexpected and unusual result. The means employed were intentional, not accidental, and do not come within the provisions of the policies sued on.

In this view of the cases at bar, the second point of error is not important; and yet it is raised on the record

and should be disposed of. Both policies refer to the appearance of a contusion or wound on the exterior of the body, but in one, this is limited by an exception where death results from drowning or where internal injuries are disclosed by an autopsy; and in the other, the provision is only that a wound or contusion on the exterior of the body should be visible in cases other than drowning, thus weakening, if not destroying, the requirement. Here the insured died on the operating table immediately following the injection of the drug; the change in the appearance of the body resulting therefrom was plainly apparent and visible even before death; the attending physician and nurses saw the patient die, and knew the cause of death; an autopsy would have disclosed nothing that they did not know, and an autopsy would have been a vain and useless thing, such as the law does not require. Where there has been an accidental death, provisions of this character, referring to "visible marks" or "wound or contusion" on the body, should be liberally construed in favor of the insured or the beneficiary. There is ample authority for this proposition. 14 R. C. L. p. 1250; *Menneiley* v. *Employers' Liability Ins. Co.*, 148 N. Y. 596, 43 N. E. 54, 31 L. R. A. 686, 51 Am. St. Rep. 716; *Horsfall* v. *Pacific Mutual Life Ins. Co.*, 32 Wash. 132, 72 Pac. 1028, 63 L. R. A. 425, 98 Am. St. Rep. 846; *Peterson* v. *Ins. Co.*, 123 Minn. 505, 144 N. W. 160, 49 L. R. A. (N. S.) 1022, Ann. Cas. 1915 A, 536; *Parker* v. *N. A. Accident Ins. Co.*, 79 W. Va. 576, 92 S. E. 88, L. R. A. 1917 D, 1174. These cases refer to policies requiring a showing of "visible marks" as distinguished from "wound or contusion" used in the policies under consideration, but we see no reason to apply a different principle to the two expressions.

The judgment of the circuit court is reversed in each of the cases before us, the verdicts set aside and new trials awarded.

*Judgments reversed; verdicts set aside; new trials awarded.*