MULLOFF v NATIONAL ACCIDENT & HEALTH INSURANCE CO.

Ohio Appeals, 8th Dist, Cuyahoga Co

No 18160. Decided June 30, 1941

William Gordon, Cleveland; J. W. McCarron, Cleveland, for plaintiff-appellant.

H. H. Bernstein, Cleveland; James Bravo, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, J.

The plaintiff appellant in the above entitled case is the beneficiary under a policy of insurance issued on January 6, 1939, by defendant appellee. The policy was an accident and health policy and was issued upon the application of Phillip Mulloff, brother of appellant, who is now deceased.

The policy in part provides that the insurer will upon the death of the insured, "from bodily injuries effected during the life of the policy, directly and independent of all other causes and solely through external violent and, accidental means, pay the beneficiary $750.00."

The third amended petition of the appellant alleges that prior to March 18, 1939, the deceased had been under treatment of a licensed medical doctor for a severe cold which had been diagnosed by the doctor as bronchitis. and from which illness, the petition alleges,

the said decedent had "fully or partially recovered."

On March. 18, 1939, while said policy of insurance was in full force and effect, the said doctor administered an intravenous injection of a poison compound. the main ingredient of which was arsenic, into the body of decedent, which resulted in his instant death; that said physician intended to treat the decedent with a non-poisonous drug but without the knowledge of the doctor and without the knowledge and consent of decedent, said poisonous drug was accidentally administered; that the mistaken and unintentional use of the poisonous drug in place of the non-poisonous drug, was the sole and proximate cause of the death of decedent.

The petition further alleges that there was no other contributing cause of the decedent's death. The petition of appellant further alleges that within ten days of the death of Philip Mulloff, the insurer was notified of said death and on April 7, 1939, the affirmative written proof of death was filed with the insurer.

To the petition as thus outlined, the defendant appellee filed a demurrer. The ground upon which such demurrer was based was that the said third amended petition did not contain facts sufficient to constitute a cause of action.

The court sustained the demurrer and granted leave to the plaintiff to file a fourth amended petition. The plaintiff-appellant thereupon filed his fourth amended petition which changed the allegations of the 3rd amended petition by alleging that said Philip Mulloff had, prior to March 18, 1939, completely recovered from the severe cold or bronchitis for which he had first consulted the doctor.

The defendant appellee filed a motion to strike the fourth amended petition from the files, as not complying with the prior order of the court, which motion the court granted. The plaintiff-appellant thereupon informed the court that he did not desire to plead further. and final judgment was thereupon entered against him from which final order this appeal was taken.

The defendant-appellee contends that this appeal is not taken from a final order.

The record discloses that the court sustained a demurrer to the original petition, and likewise sustained a demurrer to the first amended petition, the second amended petition and the third amended petition. The ground upon which these demurrers were sustained were that the petitions did not state facts sufficient to constitute a cause of action and after sustaining the demurrer to the third amended petition the plaintiff filed within rule the fourth amended petition which changed the allegations of the third amended petition as above set forth.

The appellee then filed a motion to strike said fourth amended petition, on the ground that the allegations were not materially different than the petition which it purported to amend. The court sustained the motion, the legal effect of which was to find that the fourth amended petition did not state facts sufficient to constitute a cause of action. In reality the motion was treated by the court as a demurrer. The plaintiff then notified the court that he did not desire to plead further and a final judgment was entered, from which judgment this appeal is taken, and is therefore in all respects proper.

Coming now to a consideration of the merits of the case. It was contended by defendant appellee that the death of decedent did not come about in such a way as to vest a right in the beneficiary to claim the amount payable in case of the death of the assured. That is, the appellee challenged the sufficiency of the pleaded facts to establish the death of Philip Mulloff, as having been caused by external violent and accidental means without any other contributing factor, because, first, the force causing death was not an external force within the terms of the policy, and second, that the drug was administered by the doctor in his professional capacity in attempting to treat the

deceased and therefore the taking of such poison under the circumstances was voluntary on his part and did not come about by accident. That is, if there was an accident involved in the facts stated, such accident concerned the death itself and not the cause which brought about the death.

As to the first question, the courts have, without deviation, held that death caused by the administering of poison into the system of a human being is in fact a death caused by the use of external violence and force. Although we find no cases in Ohio directly in point, a close analogy is found in the case of **United States Mutual Accident Association v Hubbell, 56 Oh St 516.** Syllabus 1 reads:

"Death caused by accidental drowning is death 'through external, violent and accidental means' within the meaning of the stipulation of an accident policy which gives indemnity against death by such means."

On page 526 the court says:

"And it is now settled by uniform adjudication that although the drowning is the result of the action of water internally, yet the water is external and that accidental death by drowning is produced 'through external, violent and accidental means' within the import of an accident policy."

Perhaps an analogy coming even closer to the facts in the case at bar are the cases where death is caused directly and independently of all other causes by inhaling poisonous gas.

Couch on Insurance, Vol. 5, ¶1150, page 4038:

"Death or injury by the inhalation of poisonous or irrespirable gases, without design, intent or expectation on the part of the insured—that is, through accident—is by external, violent and accidental means, since the gas is external, the result is unnatural, and the cause of violent."

Fidelity & Casualty Co. v Lowenstein, 46 L. R. A. 450.

Wigger v Mutual Insurance & Indemnity Co., 205 Wis. 95.

In considering this phase of the case we must remember that the facts pleaded are that the doctor "injected" a poisonous compound into the body of decedent so that under the decided authorities the cause of the death is unquestionably from an external, violent force.

As to the remaining questions, it seems to be the position of appellee that the facts alleged in the fourth amended petition, not only failed to allege facts to support the appellant's claim that the death was caused by external force and violence, but also that appellant failed to allege facts necessary to support the claim that the death came about solely by "accidental means" and independently of all other causes. In other words, the facts pleaded did not bring the case within the terms of the policy requiring that death come about from accidental means.

Certainly the plain interpretation of the allegations contained in the fourth amended petition are that the doctor purely by accident and inadvertence, injected into the body of decedent a deadly poison when he thought he was using a non-poisonous drug. Can there be any question that the death was caused by accident? It is the opinion of this court that the facts pleaded do state a cause of action under the terms of the policy.

The appellant has brought to our attention the case of **New Amsterdam Casualty Company v Johnson, Admrx.; 91 Oh St 155.** In this case the court is concerned with the question of what constitutes an injury or death brought about by accidental means. In discussing the question, the court on page 158, says:

"It is not an accident for which an insurance company would be liable if one so insured would, while in a state of lively perspiration, stand before an open window, take cold and die. Nor

if by some grave immoderation in eating, acute indigestion be occasioned and heart failure result. Nor yet, if in taking a dose of strychnine, aware of its poisonous nature and knowing that in certain sized doses it is a heart stimulent and not deadly but mistaking the effect of a given quantity, death ensued."

"Undoubtedly an accident, in both its technical and commonly accepted meaning, is an event which occurs without one's foresight or expectation and wholly undesigned, yet it is not true that every unusual, unforeseen and unexpected event is an accident within the meaning of the term as used in insurance policies."

The Court in this case is concerned with facts and circumstances entirely different than those alleged in the fourth amended petition of appellant, and is distinguishing between a result brought about by "accidental means" and a result which, though unexpected, was produced by acts purposely and intentionally performed without mistake.

Here a highly poisonous substance was accidentally and inadvertently injected into the body of the decedent and certainly therefore the death came about by "accidental means", as distinguished from "accidental result".

Our attention is likewise called to the case of **Burns v Employers Liability Assurance Corporation Ltd., 134 Oh St 222.** The sole question before the Supreme Court in that case was whether or not the death of decedent came about by accident or from disease. Syllabus 1 reads as follows:

"Death due to amebic dysentery, contracted from drinking water which had been infected by the breaking of a sewer pipe in a hotel, is not an included coverage within the terms of an accident policy insuring against bodily injuries sustained solely and independently of all other causes through accidental means."

Judge Gorman on page 224, in approaching a discussion of the law of the case, says:

"Briefly, we are to consider whether the death of one caused by amebic dysentery, contracted from drinking water infected by the breaking of a sewer pipe, is the result of a bodily injury sustained by accidental means.

There is little to guide us in the decided cases of this State with reference to the construction of an insurance policy of this nature. **Primarily we are to determine the line of demarcation between an accidental injury and a disease."**

Certainly it could not be contended that the injection of a deadly poison into the body of a human being unintentionally and by inadvertence or mistake, thereby causing death, was occasioned by virtue of disease.

Couch on Insurance, Vol. 5, ¶1147:

"Notwithstanding the fact that poison or an overdose of medicine is inadvertently or accidentally taken, the case involves some degree of negligence. It is generally held that resulting death or injury is from accident or accidental means."

"It has been so held with respect to death resulting from * * * the mistake of a physician in using poison for water; from unknowingly taking a poisonous drug given insured by mistake; in place of a harmless drug which had been prescribed and from strangulation caused by an attempt to swallow dry sal hepatica for medicinal purposes."

In Christodoulas M. Thalassinas v Master Accident Company, 84 New Hamp. 261, plaintiff's petition charged that a physician so carelessly, negligently and unskillfully applied and administered certain electrical treatment that the plaintiff received severe burns, causing disability as described in the policy.

The plaintiff was treated by a physician with an electrical treatment for

neuralgia. The policy provided for loss of time from his ordinary business pursuits resulting directly and independently of all causes, from bodily injuries sustained during the life of said policy solely through external, violent and accidental means.

The court held that the policy of insurance insured against damages through loss of time from bodily injuries caused solely through external, violent and accidental means, covered burns received from the negligent administration of electrical treatment by a doctor.

In the case of Boom v Brotherhood Accident Co., 85 Penna. Superior Court Reports 395, the facts were that a doctor desiring to subject deceased to an x-ray examination gave him a written prescription calling for two ounces of barium sulphate, an insoluble powder used in x-ray examinations, directing him to take it in milk in the morning and then to report for an x-ray the next afternoon. He took the prescription to a druggist who erroneously supplied a soluble salt of barium, a poison, although labeled "barium sulphate". The decedent took it as advised and from the effects thereof died in 24 hours. Upon these facts the court said:

"An insured who met his death by mistakenly taking a soluble salt of barium, a poison, instead of barium sulphate, an insoluble powder, used in x-ray examinations, will be considered to have met his death as a result of external, violent and accidental means."

Also see:
Reilly v Interstate Business Men's Accident Association, 152 N. W. 617.

In line with the foregoing authorities, we conclude that the facts alleged in the fourth amended petition of plaintiff, appellant, are sufficient to constitute a cause of action based on the provisions of the policy issued to the deceased by the defendant appellee, and that the trial court erred in sustaining a demurrer to the third amended petition and in striking the fourth amended petition from the files, on the ground that it did not contain sufficient facts to constitute a cause of action.

The judgment of the Court of Common Pleas is therefore reversed, and this cause is remanded for further proceedings according to law.

LIEGHLEY, PJ. and MORGAN, J., concur.