[No. 30782. Department One. May 7, 1949.]

CLARA McMAHAN, *Respondent*, v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION, *Appellant*.[1]

*H. E. Grimm*, for appellant.

*C. D. Cunningham* and *Hull & Armstrong*, for respondent.

HILL, J.—This is an action on a policy which insured Clarence L. McMahan

" . . . against loss of life . . . resulting directly and independently of all other causes, from bodily injuries sustained . . . through purely Accidental Means. . . ."

Mr. McMahan went to a hospital for an operation for the removal of herniated discs in the fourth and fifth interspaces of the lumbar vertebrae. The operation for the removal of the herniated discs was successful, but about twelve hours later Mr. McMahan died. An autopsy disclosed that he had a thrombus, commonly called a clot, in the left iliac vein, which had formed prior to the time of the operation. This condition was not known to the operating surgeon. It was

[1]Reported in 206 P. (2d) 292.

established that death was caused by the dislodgment of a part of the thrombus, called an embolus, which traveled via the blood stream through the heart and into the lungs, and there caused a pulmonary thrombosis, which in turn was the cause of death.

The thrombus in the left iliac vein was completely disassociated from the region of the operative procedure; but a pathologist called by the respondent testified that, in his opinion, the breaking off of the embolus from the pre-existing thrombus was caused by the lowering of the blood pressure, changes in the blood stream, and rapidity of the blood flow, all caused by the anesthetic and the prolonged operation (three hours), together with manipulation and posture of the body during the operation. He further testified that the Holman test is widely used to determine the presence of a thrombus, has been used for twenty-five or thirty years, and should be given prior to the performance of any major surgery.

The operating surgeon testified that he knew of no way by which he could have determined the presence of the thrombus. He stated that, had he known of the existence of the thrombus, he either would not have operated or would have tied off the vein to prevent an embolus from breaking off and would have given certain medicines to prevent clotting.

The jury returned a verdict for the plaintiff, and, from the judgment entered thereon, this appeal is taken.

The only question involved is whether or not Mr. McMahan's death was due to bodily injuries sustained through accidental means directly and independently of all other causes.

In *Evans v. Metropolitan Life Ins. Co.*, 26 Wn. (2d) 594, 174 P. (2d) 961, we declared this jurisdiction committed to the rule that,

" . . . under a policy against death or injury by accidental means, it must appear the means was accidental, and that it is not enough that the result was unusual, unexpected, or unforeseen."

We there specifically refused to follow a line of cases from other jurisdictions which hold that,

". . . where the injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death results from accidental means, although there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event which causes the injury or death."

We also concluded that

". . . accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death."

The respondent places great reliance upon *Zinn v. Equitable Life Ins. Co.*, 6 Wn. (2d) 379, 107 P. (2d) 921. The *Zinn* case was not a case of a deliberate act and an unexpected and unforeseen death resulting therefrom; there was an intervening additional, unusual, unexpected, or unforeseen event; *i.e.*, the entry of staphylococcus germs into the blood stream through the incision made by a physician to withdraw some blood from the patient.

Respondent urges, somewhat persuasively, that the breaking off of an embolus from a thrombus in the left iliac vein, which in turn caused a pulmonary thrombosis which resulted in death, was just as much an unexpected or unforeseen event, and just as deadly, as the entry of the staphylococcus germs through the incision in the *Zinn* case.

We make no point of the obvious distinction that the germs came from without and were held to be an external means under the provisions of the Zinn insurance policy for payment if death resulted

"'. . . directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means . . . ',"

because the policy provision here in question says nothing about external or violent means, but limits itself to accidental means.

The analogy between the two cases breaks down on the proposition that the breaking off of the embolus was an unexpected or unforeseen event or happening, because the testimony clearly establishes that the breaking off of an embolus from a thrombus was to be expected as the result of such an operation. The operating surgeon recognized that by saying that he would not have operated had he known of the existence of the thrombus, or would have taken certain measures to prevent the breaking off of the embolus from the thrombus. The pathologist called by the respondent made it clear that the breaking off of an embolus from a thrombus in consequence of such an operation is the expected result, and that good practice requires that a test for the presence of a thrombus be made before any major surgery.

█ It is clear that what was unexpected and unforeseen was not *an event or happening* such as the breaking off of the embolus, but *the pre-existing physical condition, i.e.,* the existence of the thrombus. The closest analogy would be found in those cases dealing with unexpected and unforeseen hypersensitivity to an anesthetic, causing death, as in *Hesse v. Travelers' Ins. Co.,* 299 Pa. 125, 149 Atl. 96, and *Otey v. John Hancock Mut. Life Ins. Co.,* 120 W. Va. 434, 199 S. E. 596. In each of those cases, there was a voluntary or intentional act, *i.e.,* the taking of an anesthetic, which, coupled with the existing but unknown and unforeseen bodily condition of hypersensitivity, resulted in an unforeseen and unexpected death. In the latter case, it was said:

"The case is one of first impression in this state. We have cited the authorities on the question involved to show the different viewpoints, and we must adopt the view which best represents our idea of the proper rule. That the result of the means employed by the surgeon in administering the anesthetic was unusual and unexpected is clear from the evidence, but were those means accidental? The surgeon did exactly what he intended to do, namely, administer novocaine, and the patient invited and therefore consented to its use. Can it be said that the means employed, under such circumstances, were accidental? We think not. The result was not one which was contemplated or expected, and came

about from an unknown and unascertainable hypersusceptibility of the patient to the drug employed. Was that result different from that which so frequently occurs in surgical operations, where something unexpected happens, such as blood poisoning, heart failure and other complications from which death results? True, the hypersusceptibility herein considered is rare, but it exists, and must be reckoned with. Can the fact that it is rare and unusual be held to make its appearance an accident? In this day of expert surgery, unfavorable developments, especially in minor operations such as that involved in this case, are rare; and yet they occur, are unexpected, and in most instances, result from some latent weakness of the body rather than from the operation itself. It is argued that the death of the insured may be said to be an accident from the fact that the surgeon did not intend to inject the novocaine into a body which was hypersensitive to the drug, and that the patient would not have submitted to the injection had she known such to be true; but may it not also be said that a surgeon never intends to administer an anesthetic calculated to bring about the death of a patient, nor the patient to receive it. Every surgical operation, however simple, involves some risk, and the fact that the risk is slight does not convert into an accident an unexpected and unusual result. The means employed were intentional, not accidental, and do not come within the provisions of the policies sued on."

(A different conclusion is, of course, reached in the hypersensitivity-to-anesthetics cases in those jurisdictions where it is held that, if an injury or death is the unusual, unexpected, or unforeseen result of an intentional act, it results from accidental means. *Mutual Life Ins. Co. v. Dodge* (C. C. A. 4th), 11 F. (2d) 486, 59 A. L. R. 1290.)

We cite herewith a number of cases from this and other jurisdictions where there was (a) an intentional act, (b) a pre-existing bodily condition which, because of the intentional act, caused (c) an unforeseen and unexpected death. In each of these cases, while the death was unexpected and could be classed as accidental, it was held not to have been caused by accidental means within the contemplation of the provision in an insurance policy such as that now under consideration. *Shanberg v. Fidelity & Cas. Co.,* 158 Fed. 1, 19 L. R. A. (N.S.) 1206: (a) carrying a door, (b) heart ail-

ment, (c) death; *Rock v. Travelers' Ins. Co.,* 172 Cal. 462, 156 Pac. 1029, L. R. A. 1916E, 1196: (a) carrying a casket, (b) abnormal heart condition, (c) death; *Herthel v. Time Ins. Co.,* 221 Wis. 208, 265 N. W. 575: (a) hauling a boat out of water, (b) heart ailment, (c) death; *Hodges v. Mutual Benefit Health & Accident Ass'n,* 15 Wn. (2d) 699, 131 P. (2d) 937: (a) dancing, (b) thrombosis, (c) death; *Evans v. Metropolitan Life Ins. Co., supra:* (a) pushing automobile, (b) arteriosclerosis, (c) death.

Appellant urges that here the deliberate act was submission to an operation for herniated discs and the successful performance of that operation, that the effect of the operation on the pre-existing thrombus resulted in an unexpected death, and that, under the authorities cited, the death was not caused by accidental means. With that we must agree unless, to use the language of the *Evans* case, *supra,* there was "some additional, unexpected, independent, and unforeseen happening" which can be said to have brought about the death.

We have already disposed of respondent's contention that the breaking off of the embolus was such a happening. Respondent, however, takes the further position that there was a mishap, or misadventure, in the operative procedure, in the failure of the operating surgeon to make the test necessary to ascertain whether or not there was a thrombus and to take the steps necessary to prevent an embolus from breaking off and getting into the blood stream.

There are many cases from this and other jurisdictions which support the proposition that, although the submission to a surgical or dental operation or a hypodermic injection is a deliberate act, if there is some slip or mishap—some unintended or unexpected happening in connection with the operation or injection—it can be the accidental means from which injury or death results, within the contemplation of insurance policies such as the one with which we are here concerned. *Aetna Life Ins. Co. v. Brand,* 265 Fed. 6, 13 A. L. R. 657 (surgeon's needle punctured artery); *Frommelt v. Travelers' Ins. Co.,* 150 Minn. 66, 184 N. W. 565 (lacera-

tion of urethra in passing a catheter through it); *Mulloff v. National Accident & Health Ins. Co.,* 67 Ohio App. 464, 37 N. E. (2d) 217 (doctor by mistake injected a poisonous compound into blood stream); *Zinn v. Equitable Life Ins. Co., supra* (germ entered body in consequence of lancing of arm).

In the present case, the operating surgeon did just what he intended to do; there was no slipping of the scalpel, no puncturing of an artery, no mishap or other unintended or unexpected happening in connection with the operation.

To bring this case within the rule laid down in the *Evans* case, *supra,* whereby the unexpected consequence of a deliberate act cannot be said to have been caused by accidental means unless there was "some additional, unexpected, independent, and unforeseen happening" which can be said to have caused or produced the injury or death, the respondent must take the position that the additional happening can be an omission—in this case, failure to give the Holman test; in fact, because in this case the operating surgeon did not intend to give the Holman test, the happening must be the omission of something that the surgeon never intended to do. The only fault, if any, of the operating surgeon here was that he did not know that there was a method by which the existence of a thrombus might be determined.

We finally find ourselves, as we follow respondent's argument, confronted with the question of whether lack of knowledge, on the part of an operating surgeon, of a test or technique which is usual and ordinary surgical practice, can be regarded as accidental means, when that test or technique, if applied, might have avoided the injury or death of the patient. We think not.

Where there is no mishap, no unexpected or unforeseen happening in connection with an operation, and the doctor does exactly what he intended to do and omits nothing that he intended to do, his acts, omissions, or ignorance do not constitute accidental means. We have found only one case in which there is a discussion of the failure of a doctor or dentist to conform to the standards of good practice as constituting accidental means. In *Adams v. Metropolitan*

*Life Ins. Co.*, 136 Pa. Super. Ct. 454, 7 A. (2d) 544, it was held that, even if a dentist was guilty of negligence in what he did, there was no injury by accidental means so long as his action was intentional and not "a mishap, fortuitous happening, [or] untoward event.":

This is not an action in tort, predicated on the lack of knowledge by the operating surgeon of tests and techniques generally recognized and utilized by surgeons; but it is an action on a contract to pay if death was occasioned by accidental means. The failure to give the Holman test was not accidental, as that word is generally used and commonly understood.

Respondent says that she comes squarely within the statement or suggestion made when we reversed the trial court for sustaining a demurrer to the second amended complaint in this case (see *McMahan v. Mutual Benefit Health & Accident Ass'n*, 28 Wn. (2d) 202, 182 P. (2d) 4) that:

"It is conceivable that, if given the opportunity, she may be able to show that, during the operation itself, through some oversight a particular act was done, or was left undone, which caused or made inevitable the embolism, and that such act or neglect can reasonably be found to be purely an accident, or to constitute accidental means."

We may assume that the jury could have found that, through the failure of the operating surgeon to give the Holman test, the existence of the thrombus in the left iliac vein was not discovered, and that the embolus which was dislodged during the operation could have been prevented from entering the blood stream had the thrombus been known to exist. However, nothing was done, or left undone, by accident.

Since we conclude that the respondent has failed to establish that Mr. McMahan's death resulted from accidental means, the appellant's motion for a nonsuit or for judgment n.o.v. should have been granted. It becomes unnecessary to examine the various assignments of error based on instructions given or rejected.

The judgment is reversed, with instructions to the trial court to enter a judgment of dismissal.

JEFFERS, C. J., STEINERT, BEALS, and MALLERY, JJ., concur.