[No. 11854-4-I.   Division One.   December 19, 1984.]

JOSIE M. FAGAN, *Respondent,* v. J. C. PENNEY INSURANCE CO., *Appellant.*

*Bogle & Gates* and *Thomas J. McKey,* for appellant.

*Miracle, Pruzan & Nelson* and *Howard P. Pruzan,* for respondent.

SWANSON, J.—J. C. Penney Insurance Company appeals from a declaratory judgment alleging that the trial court

erroneously interpreted a policy insuring against death caused by an accident. We affirm.

J. C. Penney Insurance Company issued a policy insuring Matthew P. Fagan against death caused by an accident. It provided in pertinent part:

> If a Covered Member shall suffer such injury and if such injury shall result directly and independently of all other causes . . . the Company will pay [$25,000] . . .

The policy defined "injury" to mean "bodily injury caused by an accident . . ."

The insured, Mr. Fagan, voluntarily submitted to a surgical operation in an effort to allay the increasing frequency of cardiac arrhythmia episodes he had suffered for a number of years. The surgical operation required the surgeons to divide Mr. Fagan's sternum and retract his rib cage. During this process, Mr. Fagan's blood pressure fell. The surgeons responded by reducing the retraction until normal blood pressure returned. After a series of increasingly wider retractions, the surgeons were finally able to obtain the desired retraction without a resultant drop in blood pressure. After performing the operation in the manner in which he had intended, without omissions, mishaps, or inadvertent acts in the operative techniques, the surgeon reported to Mrs. Fagan that the surgery had gone well and that Mr. Fagan would have no further heart problems.

Unfortunately, however, Mr. Fagan failed to awaken the following day. Shortly thereafter he was declared to have suffered brain death. The operating surgeon believed that Mr. Fagan had suffered brain death because of cerebral ischemia (an inadequate circulation of blood and oxygen to the brain) and that this had occurred during the operation. He believed that the cerebral ischemia was related to the retraction, but he was not certain as to its precise cause. Nevertheless, he expressed some belief that scar tissue from Mr. Fagan's earlier lung operation, of which the surgeon had knowledge, may have restricted the mobility of certain arteries which were unknowingly and unintentionally angulated by the retraction. The surgeon also testified that he

had no knowledge at the time that this was happening and that there were no medical tests which would have enabled him to prevent this. Also, although having discussed with Mr. and Mrs. Fagan the potential risks Mr. Fagan would be assuming by submitting to this surgery, the surgeon testified that he did not foresee nor expect brain death.

Following a trial to the court, the following findings of fact were entered:

## II

Matthew P. Fagan died on April 7, 1979. His death occurred in connection with a surgical procedure described as a division of the His bundle designed to overcome the effects of cardiac arrhythmia. In the course of the surgery, the surgeons inadvertently, unintentionally and contrary to their intentions interfered with the flow of blood to Mr. Fagan's brain, producing a condition described as cerebral ischemia, which, in turn, produced brain death and led to his subsequent death.

## III

The *result* of the operation *was unusual, unexpected and unforeseen,* and the *means* which produced the insured's death—the interference with the flow of blood to the brain—*was accidental* in that the physicians did not know and reasonably could not know of the fact that their actions in spreading apart the sternum of their patient was having such effect and there was no reasonably available test which would have enabled them to know in advance that their actions would cause such interference.

(Italics ours.) The trial court then concluded that Mr. Fagan suffered an "accidental" death within the meaning of that term as used in the policy and that coverage resulted thereby. The court therefore entered judgment in the amount of the policy ($25,000) plus interest.

Assuming, without deciding, that the policy language "caused by an accident" requires both the *means* and *result* to have been unexpected, unusual, and unforeseen,[1] we

---

[1]Because of our disposition of this case, we need not discuss the validity of distinguishing between insurance policies insuring against death "caused by an accident" as we have in this case, and those insuring against death caused by

must determine whether the facts support the trial court's findings.

The appellant contends that this case is controlled by *McMahan v. Mutual Benefit Health & Accident Ass'n*, 33 Wn.2d 415, 206 P.2d 292 (1949). In that case, Mr. McMahan died about 12 hours after a successful operation on his herniated discs. An expert testified that a blood clot, which had formed prior to surgery, had been dislodged during the operation and traveled into the lungs where it caused a pulmonary thrombosis, which in turn caused death. The expert also testified that there existed a widely used test to determine the presence of a blood clot and that it should have been given prior to any major surgery. The operating surgeon, however, testified that he knew of no way by which he could have determined the presence of the blood clot. He also stated that, had he known of the existence of the clot, he would have taken precautions against dislodging it. The court found Mr. McMahan's death not to have been caused by accidental means[2] because neither the preexisting physical condition, *i.e.*, the existence of the clot, nor the breaking off of part of the clot was an unexpected and unforeseen event or happening. As the court specifically noted at page 418, the breaking off of part of the clot "was to be expected as the result of such an operation."

The instant case involves facts contrary to those in *McMahan*. Here, the preexisting physical condition, *i.e.*, the existence and extent of scar tissue, was expected. The angulation of arteries which stopped or slowed the flow of blood to Mr. Fagan's brain, however, was neither expected nor foreseen; nor was there any test available to discover that angulation would have occurred to the extent to which it occurred. Additionally, the surgeon testified in his deposition that, "There's nothing inherent to dividing the ster-

---

"accidental means," as existed in *McMahan v. Mutual Benefit Health & Accident Ass'n*, 33 Wn.2d 415, 206 P.2d 292 (1949). *See McKinnon v. Republic Nat'l Life Ins. Co.*, 25 Wn. App. 854, 860, 610 P.2d 944 (1980) (Reed, C.J., concurring).

[2]See footnote 1.

num and spreading it apart that should really have a big impact on circulation." Thomas deposition, at 31.

Despite the fact that his surgical actions were done in a deliberate and intentional manner, there was no evidence that the surgeon caused cerebral ischemia with "design, intent or obvious motivation." *Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 674, 689 P.2d 68 (1984). Therefore, we conclude that a fact finder could indeed have found that the cerebral ischemia constituted an unexpected and unforeseen[3] event, and that this, therefore, amounted to the "accidental means" to Mr. Fagan's death which was, without controversy, an unexpected result. Accordingly, the trial court properly concluded that Mr. Fagan suffered an "accidental" death as contemplated by the terms of the insurance policy.

Judgment is affirmed.

CALLOW and SCHOLFIELD, JJ., concur.

---

[3]We note an important distinction between "foreseen" and "foreseeable." *See McKinnon v. Republic Nat'l Life Ins. Co.,* 25 Wn. App. 854, 863, 610 P.2d 944 (1980) (Reed, C.J., concurring). That which is "foreseeable" is not necessarily "foreseen." The latter portends of events which are certain or unavoidable; the former encompasses events which may possibly occur. Whether a "foreseeable" event falls within the meaning of the term "foreseen" is a determination properly left within the province of the fact finder.