GUY C. KLUGE v. BENEFIT ASSOCIATION
OF RAILWAY EMPLOYEES.

149 N. W. (2d) 681.

March 31, 1967—No. 39,713.

*Feinberg, Mirviss, Meyers, Schumacher & Malmon,* for appellant.
*Sheridan J. Buckley, Jr.,* for respondent.

NELSON, JUSTICE.

This action is for a declaratory judgment to determine the rights of Guy C. Kluge under the terms of a policy issued to him by defendant, Benefit Association of Railway Employees, insuring against disability from (1) accidental bodily injury and (2) sickness or disease.[1] The court determined upon a special verdict that plaintiff was entitled to certain disability benefits, but upon a motion for judgment n. o. v. or a new trial vacated its first order and entered an order determining that plaintiff was only entitled to recover benefits for nonconfining sickness for a 12-month period. Plaintiff appeals from this order.

It is contended that the trial court erred in its determination that plaintiff was not entitled to disability benefits as a result of an accident

---

[1] The benefits provided by the policy are defined as:

"PART III.   ACCIDENT DISABILITY BENEFITS:

"A.   Total Disability: If injury to the Insured results in total and continuous disability and prevents him from performing any and every duty of his regular occupation, business or profession, the Association will pay benefits at the rate of the Regular Monthly Benefit for a period not to exceed twelve (12) months of such disability. If the Insured continues to be totally disabled and is wholly and continuously prevented from performing any and every duty pertaining to any business, profession or occupation, the Association will pay benefits at the rate of the Regular Monthly Benefit for the period of such disability so long as the Insured shall live and suffer such total loss of time.

"B.   Partial Disability: If the Insured as the result of injury shall be partially disabled, whether preceding or following a period of total disability, if any, the Association will pay benefits at the rate of fifty (50) per cent of the Regular Monthly Benefit for disability of one day or more during the period of such partial loss of time, but not to exceed a maximum period of six (6) consecutive months for any one accident.

"C.   Non-Disabling Injuries: If injury to the Insured requires treatment by a licensed physician or surgeon within twenty-four (24) hours of such injury and the Insured makes no other claim on account of such injury,

within the terms of the policy and that he did not sustain a "confining sickness" for the period referred to in the record.

It appears from the record that plaintiff, who is 63 years of age, had been employed as a section hand by the Chicago Northwestern Railroad at the time he sustained the alleged accident on July 24, 1961. He described his work as "driving spikes and putting in new ties, taking out old ones, lifting, heavy lifting. Patrolling track once a week every Monday." He was one of a crew of three, including a foreman. In the course of their work, the crew used a motor car for transportation of themselves and their tools. Sometime prior to July 24, 1961, something went wrong with the motor car they had been using and it was replaced by a heavier car. The record does not indicate how long this heavier car had been in use. At the beginning of each day's work, the crew would remove the car from the carhouse and place it on the tracks. At the close of the day's work, the car would be removed from the tracks and replaced in the carhouse.

Plaintiff testified that on the morning of July 24, 1961, while the crew was placing the car on the tracks, he experienced the sensation of "strings pulling down from my heart" and, following that, he "didn't feel too good" and was tired. It does not appear from the record that anything unusual happened when the crew placed the car on the

---

the Association will pay the Insured for the medical and surgical expense actually incurred, but not exceeding twenty-five (25) per cent of the Regular Monthly Benefit.

"PART IV. SICKNESS BENEFITS:

"A. Non-Confining Sickness: If sickness which causes continuous total disability does not confine the Insured continuously within doors, the Association will pay, commencing with the first treatment by a legally qualified physician or surgeon, other than himself, benefits at the rate of the Regular Monthly Benefit, but not exceeding twelve (12) consecutive months.

"B. Confining Sickness: If sickness confines the Insured continuously within doors for one day or more and requires regular visits therein by a legally qualified physician or surgeon, other than himself, the Association will pay, commencing with the first such visit, benefits at the rate of the Regular Monthly Benefit so long as such confinement remains continuous and causes total disability and necessitates total loss of time."

tracks. The manner in which the plaintiff performed this task was no different from previous occasions. There was no slipping, twisting, or unusual happening which was out of the ordinary or unexpected in the lifting of the car onto the tracks. After the car was placed on the tracks, plaintiff and his fellow workers patrolled the tracks until 11 a. m., after which they engaged in cutting weeds with a scythe.

Plaintiff drove home after work, arriving there at 6 p. m. He didn't feel well and his stomach bothered him. He attempted to mow his lawn. That evening he experienced chest pains radiating down into his arms and about 10:30 p. m. he was taken to a hospital, where he remained for 48 days. The diagnosis was coronary thrombosis. From July 24, 1961, to April 6, 1962, defendant paid to plaintiff under the "confining sickness" clause of the policy disability benefits at the rate of $100 per month together with hospital benefits in the sum of $480. Defendant terminated the benefits on April 6, 1962, when it was found that plaintiff was engaging in physical activity in the operation of a farm tractor about his premises.

By special verdict dated April 9, 1964, the jury specifically found that plaintiff had been totally disabled from April 6, 1962; that the heart attack was proximately caused by overexertion in lifting and moving the motor car; and that the attack proximately resulted from an accidental injury. The trial court upon motion for judgment notwithstanding determined that plaintiff was only entitled to monthly benefits of $100 for a period not to exceed 12 months for a nonconfining sickness and, subtracting the amount which had been paid by the insurance company, found that he was entitled to recover $356.67. Under authority of Gidlund v. Benefit Assn. of Ry. Employees, 210 Minn. 176, 297 N. W. 710, the trial court concluded that the coronary thrombosis sustained by plaintiff was not an accidental bodily injury within the meaning of the policy so as to entitle plaintiff to benefits under its total disability provisions nor was his illness a "confining sickness" within the purview of Paragraph IV B of the policy.

■ It is plaintiff's first contention that the trial court erred in holding that the coronary thrombosis did not result from an "accidental

bodily injury" within the meaning of the policy.[2] The question of whether a heart attack or a heart failure causing death or disability may constitute an accident so as to entitle an insured to benefits under the provisions of a policy providing benefits for death or disability so caused has given rise to a great many decisions. The precise issue is the subject of an extensive annotation, 56 A. L. R. (2d) 800, which cites Gidlund in support of the majority rule—that if an activity is carried on voluntarily and intentionally in the usual way, death or disability, although following a heart attack or heart failure and assumed to be unexpected, cannot, without proof of some unusual happening preceding the heart attack or heart failure which may have caused it, be regarded as being produced by accidental means within the meaning of an insurance policy providing benefits for the results of such means.

It is unnecessary to review or attempt to reconcile the innumerable authorities on this subject except to say that in minority jurisdictions, as exemplified by Pledger v. Business Men's Acc. Assn. (Tex. Comm. App.) 228 S. W. 110, support may be found for the proposition that recovery may be had under such policy where death or bodily injury caused in part by a preexisting disease or infirmity results from an event which might not be unusual or unexpected. The most persuasive recent holdings which have come to our attention are those of the New Jersey court in Linden Motor Freight Co. Inc. v. Travelers Ins. Co. 40 N. J. 511, 193 A. (2d) 217, and Harris v. John Hancock Mutual Life Ins. Co. 41 N. J. 565, 197 A. (2d) 863. In the Linden Motor case it was held that death from a coronary thrombosis and consequent myocardial infarction, found to have been causally related to the act of picking up some fallen cartons in a warehouse, was not within double indemnity provisions of a life policy covering death from bodily in-

---

[2] It appears that distinctions between the terms "accidental means" and "accident," "accidental result," and "accidental injury" have been disregarded by some courts, which hold that these terms should not be construed in a technical sense but should be given the ordinary popular meaning according to common speech and usage and the understanding of the average man. 29 Am. Jur., Insurance, § 1166.

juries effected through external, violent, and "accidental means." The court relied on the following statement from United States Mutual Acc. Assn. v. Barry, 131 U. S. 100, 121, 9 S. Ct. 755, 762, 33 L. ed. 60, 67:

"The court properly instructed * * * that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In the Linden Motor case Mr. Justice Hall exhaustively treats with the authorities from the various states which have passed upon or interpreted policies providing for indemnification for death or injury through "accidental" means and concludes that when the act which produced the unforeseen result was done exactly as intended, and there was nothing unusual about it other than the result itself, only the result was accidental and it was not effected by accidental means. In that decision the New Jersey court reviews Minnesota decisions including Gidlund; Taylor v. New York Life Ins. Co. 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959; Konschak v. Equitable Life Assur. Soc. 186 Minn. 423, 243 N. W. 691.

The New Jersey court said (40 N. J. 532, 193 A. [2d] 229):

"Minnesota furnishes another example of this true *ratio decidendi*. We have cited *Gidlund, supra,* 297 N. W. 710—a case of coronary occlusion caused by overexertion in cranking an auto. The court there followed the *Barry* thesis in denying recovery and expressly rejected the *Landress* dissent line of authority holding an unforeseen result as constituting accidental means. It said that the latter theory stretched legitimate construction of contractual language beyond sound reason."

In Harris v. John Hancock Mutual Life Ins. Co. *supra,* the New Jersey

court dealt with a fact situation similar to the one before us in that the plaintiff suffered a heart attack by reason of exertion in the performance of his regular work. He was engaged in moving two heavy steel tanks from a truck to a platform. In denying recovery the New Jersey court said (41 N. J. 568, 197 A. [2d] 864):

"* * * Where the resultant injury is to the heart, brought on by reason of exertion from activity, voluntarily pursued, in which nothing unexpected or unforeseen occurs beyond the injury itself, and there is nothing which a layman would understand to be an accident, the average policyholder could not reasonably reach a conclusion of coverage."

The facts in this case would not warrant a departure from the majority rule to which this court is committed. The testimony of plaintiff's expert medical witness discloses that plaintiff had a history indicating a preexisting coronary impairment. This witness testified:

"* * * His whole history goes back for several years when he was developing some dizziness. He developed choking sensations while working in the hot weather. In January of 1961 he developed pain and discomfort in the right epigastrium which lasted for six hours. In June, 1961, he had developed, while he was at rest at the time, pressure, pain in his chest, and the lower sterno region. This kept on coming back and forth all day. He was up and around, though. He was not working during the winter, and around the first of March he started doing section work, handling the ties and working on the track. About a month before July 24, 1961, he worked with a heavy motor car on the tracks. While turning the heavy motor car on the tracks with two helpers he found the work very hard and suddenly developed a pulling pain in the left chest. This came on while he was lifting part of his heavy motor car, a hand car, on the track. About a week before July 24th he had pain in the lower chest. On the 24th he went to work at 8:00 in the morning. While walking from the depot to the motor car his arms felt limp for a while. It was then after this that he lifted the motor car onto the track with help. It was very heavy work. While lifting he developed pain, a peculiar pulling sensation in the left chest. This pain would go away when he stopped and rested."

While this witness gave as his opinion that the coronary thrombosis resulted from the act of lifting on the morning of July 24, he also said: "It is my opinion that he suffered a heart attack which was due to a coronary thrombosis, because of the changes that lasted so long" and explained that there existed evidence of an underlying arteriosclerosis and that the additional factor of "changes in the blood flow" contributed to the attack.

The record, as a whole, persuaded the trial court that the event of July 24, 1961, occurred in the natural course of a degenerative heart disease rather than as a result of any particular event which occurred on that day. Since the record amply supports the trial court's conclusion that nothing occurred which was unforeseen and unexpected to require an unintentional or involuntary physical exertion which might characterize the event as accidental, we must agree with the trial court's determination.

■ It is contended that the trial court erred in holding that the evidence did not establish a "confining sickness" within the meaning of Paragraph IV B of the policy. The law with reference to the so-called "house confinement clause" has been discussed at length in recent decisions of this court. Struble v. Occidental Life Ins. Co. 265 Minn. 26, 120 N. W. (2d) 609. In Struble we pointed out that each case depends largely on its particular facts and the language of the contract. It is recognized that this type of clause should be construed liberally in favor of the insured. The construction should be reasonable in light of the facts in the particular case. Ordinarily, the continuous confinement required by the policy does not necessitate actual confinement within the walls of the house constantly and without interruption, and a claim for confining illness will not be defeated by the fact that the insured has gone out occasionally, as for example, to take exercise, to visit a physician or, as in the Struble case, to engage in those therapeutic activities which the physician prescribes. We have followed the liberal rule which holds that substantial confinement by reason of an illness or accident constitutes a sufficient compliance with the requirements of the clause. The clause is intended to describe the required extent of the insured's illness or other disability rather than to impose a strict limitation upon his conduct. An-

notation, 29 A. L. R. (2d) 1408, 1412. But even under a liberal construction of the house confinement provisions, where the insured is able to, and does, leave his home for primarily business or other personal, as contrasted with therapeutic, reasons, it is generally held that he is precluded from recovering benefits for house confinement illness or accident. Benson v. Continental Cas. Co. 275 Minn. 544, 146 N. W. (2d) 358; 29A Am. Jur., Insurance, § 1530.

It seems to us that on the basis of the record in this case the trial court correctly determined that the activities of the plaintiff were not such as to entitle him to compensation under this clause. It appeared from the evidence that the insured was in fact able to do light work in a variety of occupations, that he drove a farm tractor, operated an automobile, went on fishing trips, and on one occasion drove his automobile on a trip to and from California.

■ It is next contended that the trial court was without jurisdiction to hear defendant's motion for judgment notwithstanding the verdict or for a new trial. This claim is predicated upon the argument that the motion for a new trial was made on the minutes after the 15-day period provided by Rule 59.03(3), Rules of Civil Procedure, had expired. That rule provides:

"A notice of motion for a new trial to be heard on the minutes shall be served within fifteen days after verdict or notice of the filing of the decision or report; and the motion shall be heard within thirty days after verdict or notice, unless the time for hearing be extended by the court for good cause shown during such thirty-day period."

Defendant concedes that plaintiff's argument would be valid if the verdict had been a general verdict. Where, however, the jury has rendered a special verdict based upon interrogatories, such an interpretation of the rule could result in requiring a motion to be made before the special verdict was applied to the decision rendered by the court. Rule 58.01 provides:

"Unless the court otherwise directs, and subject to the provisions of Rule 54.02, judgment upon the verdict of a jury * * * shall be entered forthwith by the clerk; but the court shall direct the appropriate

judgment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49 * * *. The judgment in all cases shall be entered and signed by the clerk in the judgment book; this entry constitutes the entry of judgment; and the judgment is not effective before such entry. A copy thereof, also signed by the clerk, shall be attached to the judgment roll."

It is apparent that in the case of a general verdict judgment is entered forthwith by the clerk and the period of 15 days begins to run. However, in the case of a special verdict the judgment is not entered until the court so directs. The term "verdict," as used in Rule 59.03(3), refers to a general verdict only. 3 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 59.03(3), p. 315. By the special verdict, the jury finds facts, after which it becomes the duty of the court to apply the law to those facts and render a judgment. There is nothing to appeal until there is a judgment. Where there is a general verdict accompanied by answers to interrogatories, or where there is a special verdict, the clerk is not to enter judgment until after the court has directed the appropriate judgment to be entered. There cannot be a judicial resolution until that is done. 6A Moore, Federal Practice (2 ed.) par. 58.04, p. 3518; Mitchell v. District Court (9 Cir.) 270 F. (2d) 70, 2 F. R. Serv. (2d) 58.25, Case 1. It accordingly appears from the record that the motion for judgment notwithstanding was timely made.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.